**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

CORAL REALTY, LLC, and CORAL CRYSTAL LLC,

                                   Plaintiffs,

                  v.

FEDERAL INSURANCE COMPANY,

                                 Defendant.

-----------------------------------------------------------------------X

Civil Action No.
1:17-cv-01007

Judge Deborah A. Batts

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL'S MOTION**
**TO VACATE OR MODIFY THE APPRAISAL AWARD, IN WHOLE OR IN PART**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    STATEMENT OF FACTS .......................................................................................... 2

III.   MOTION TO VACATE ............................................................................................. 4

    A. Legal Standard ........................................................................................................ 4

    B. Argument ................................................................................................................. 6

        *1. The Appraisal Was Riddled with Misconduct* ................................................ 6

            a) Coral's Misconduct During the Appraisal ................................................. 7

            b) Violation of Federal's Fundamental Procedural Rights ........................... 9

        *2. The Appraisal was Not Conducted in Accordance with New York Law.* ............... 11

            a) Failure Properly to Determine Actual Cash Value and Replacement Cost ........... 12

            b) Failure to Specify the Extent of Damage ................................................. 13

            c) Failure to Explain Adjustments ............................................................... 13

        *3. The Appraisal was Not Conducted in Accordance with the Policy.* ....................... 14

            a) Improper Inclusion of Uncovered Costs ................................................... 15

            b) Failure to Value the Damage as Provided in the Policy ........................... 15

            c) Improper Consideration of Claims Not Submitted during the Adjustment ........... 16

            d) Failure to State Pre-Loss Value of the Property ....................................... 16

            e) Failure to Value the Exterior Method ....................................................... 16

        *4. The Appraisal Award Should be Vacated because It Is Wholly Irrational.* ........... 17

IV.   ALTERNATIVE MOTION TO MODIFY THE AWARD ..................................... 18

    A. Legal Standard ...................................................................................................... 18

    B. Argument ............................................................................................................... 19

        *1. The Appraisal Award Should be Modified to Remove the Tower.* ........................... 19

        *2. The Appraisal Award Should be Modified to Reflect Depreciation and Upgrades.* 21

        *3. The Appraisal Award Should be Modified to Remove Costs Not Sustained or Incurred Within the Policy-Prescribed Period.* ............................................................ 22

        *4. The Appraisal Award Should be Modified to Correct Numerous Other Errors.* .... 22

V.    CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Kleveno*,
    438 N.Y.S.2d 384 (App. Div. 2d Dep't 1981) ........................................................................ 14

*Clark v. Kraftco Corp.*,
    323 F. Supp. 358 (S.D.N.Y. 1971) ................................................................................... 4, 5, 7

*Cohen v. Atlas Assur. Co.*,
    148 N.Y.S. 563 (App. Div. 1st Dep't 1914) ............................................................................ 5

*Gansevoort Holding Corp. v. Palatine Ins. Co.*,
    170 N.Y.S.2d 171 (Sup. Ct. N.Y. Cty. 1957) ................................................................... 5, 14

*Gervant v. New England Fire Ins. Co.*,
    118 N.E. 2d 574 (N.Y. 1954) ......................................................................................... 5, 9, 11

*In re Delmar Box Co.*,
    127 N.E.2d 808 (N.Y. 1955) ............................................................................................. 5, 18

*John P. Burke Apartments, Inc. v. Swan*,
    528 N.Y.S.2d 718 (App. Div. 3d Dep't 1988) ........................................................................ 13

*McAnarney v. Newark Fire Ins. Co.*,
    159 N.E. 902 (N.Y. 1928) ............................................................................................... 11, 12

*Mizrahi v. Nat'l Ben Franklin Fire Ins. Co.*,
    37 N.Y.S.2d 698 (City Ct., Kings Cty. 1942) .................................................................. 14, 16

*N.C. Farm Bureau Mut. Ins. Co. v. Sadler*,
    711 S.E.2d 114 (N.C. 2011) ................................................................................................... 18

*Penn Cent. Corp. v. Consol. Rail Corp.*,
    436 N.E.2d 512 (N.Y. 1982) ................................................................................................... 5

*Rice v. Ritz Assocs.*,
    450 N.Y.S.2d 7 (App. Div. 1st Dep't 1982) ......................................................................... 14

**Cases (cont'd)**

*Strome v. London Assur. Corp.*,
    47 N.Y.S. 481 (App. Div. 2d Dep't 1897) ............................................................... 9, 15

*Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*,
    No. 02 CIV. 6741 (HB), 2003 WL 1744288 (S.D.N.Y. Mar. 31, 2003) ................................. 18

*Zarour v. Pac. Indem. Co.*,
    No. 15-CV-2663 (JSR), 2017 WL 946332 (S.D.N.Y. Feb. 22, 2017) ................................. 5, 12

**Rules & Statutes**

N.Y. C.P.L.R. § 7511 (McKinney 2018) ............................................................... passim

N.Y. INS. L. § 3408(c) (McKinney 2018) ....................................................... 5, 12, 13

**Books and Treatises**

JONATHAN WILKOFSKY,
    THE LAW AND PROCEDURE OF INSURANCE APPRAISAL (3d ed. 2015) ............................ 9, 13, 15

# I.    PRELIMINARY STATEMENT

Federal Insurance Company ("Federal") respectfully submits this Memorandum of Law in support of its Motion to Vacate or Modify the Appraisal Award in Whole or in Part.  Federal insured an NYU dormitory building (the "Building") owned by Plaintiffs Coral Realty, LLC, and Coral Crystal LLC (collectively, "Coral").  The Building's wall sustained minor damage, which could readily be repaired from the exterior of the Building (the "Exterior Method").  However, Coral insisted on an impossible repair from the inside of the Building (the "Inside-Out Method").  When Coral demanded appraisal pursuant to the insurance policy (the "Policy"), Federal agreed to proceed if the appraisal would value both methodologies.  Unfortunately, Coral's misconduct during the appraisal fatally compromised the resulting award (the "Award" or "Appraisal Award").  Federal respectfully requests that this Court vacate the Award in its entirely, or in the alternative, modify it in whole or in part.

The Award should be vacated because Coral's misconduct materially prejudiced Federal's rights.  After demanding that Federal not communicate with its own appraiser, Coral's executive participated directly in the appraisal.  His *ex parte* pleas increased the scope of the Award.  Further, Coral and the umpire encouraged Federal's appraiser to "settle" directly with the Coral executive rather than complete the appraisal.  The panel denied Federal's appraiser access to crucial documents and ignored the evidence he submitted.  Ultimately, the umpire felt "pressure" to end the appraisal, and simply accepted Coral's claim with arbitrary discounts.  This misconduct mandates vacatur of the Appraisal Award.

The Appraisal Award should also be vacated because the appraisal was not conducted in accordance with the Policy or New York law.  The Award failed to identify both actual cash value ("ACV") and replacement cost ("RCV"), leaving Federal unable to determine its obligations under

the Policy. Further, it failed to identify the extent of damage and explain its adjustments. Rather, the Award sets forth Coral's estimate with arbitrary, unexplained adjustments. Additionally, the appraisal improperly considered new claims never submitted during the adjustment. Finally, the appraisal valued only Coral's impossible Inside-Out Method. Not even Coral can explain the feasibility of its Inside-Out Method, and tellingly, in the six years since the loss, it has made no effort to proceed with construction. As detailed below, the Award should be vacated.

To the extent it is not vacated entirely, the Award should at a minimum be modified to remove uncovered costs. For example, the Award includes a multi-million-dollar, temporary stair tower, and numerous upgrades to the Building. It also includes uncovered extra expenses and contains numerous other errors. To the extent the Award is not wholly vacated, it should at least be modified to correct these errors, and any remaining portion should be limited to a valuation of Coral's Inside-Out Method. For these reasons, and as explained more fully below, Federal respectfully asks that the Court grant this motion and vacate the Appraisal Award or, at a minimum, modify it to correct its manifest errors.

## II.    STATEMENT OF FACTS

Federal insured the Building, which is owned by Coral. On December 5, 2012, the Building was damaged during the construction of a neighboring structure. Specifically, a minor amount of concrete pressed against a few areas of the Building's north wall (the "Wall"). On December 10, 2012, Coral sued its neighbor to enjoin further construction. On February 21, 2013, Coral notified Federal of the loss. Declaration of Gerard R. Rudoshko ("Rudoshko Dec.") ¶ 6. During an inspection five days later, Federal's adjuster found minor damage to the Wall in apartments 307A and 407A. *Id.* ¶¶ 8-9. Although Federal asked to inspect the Building with its engineer and building consultant, Coral did not schedule this inspection until December 9, 2014,

two years after the loss. *Id.* ¶¶ 10-11. Coral attributed the delay to the litigation against its neighbor. *Id.* ¶ 12. In August 2015, Coral submitted a $7.2 million estimate, which included approximately $3.8 million for a temporary stair tower (the "Tower"). *Id.* ¶ 13. Coral alleged that the Tower, which makes up more than half of Coral's repair estimate, was required by the building code. *Id.* ¶ 14; Declaration of Wayne W. Martin ("Martin Dec.") ¶ 40. Federal advised that the estimate was inflated, the proposed repair methodology was impossible to perform, and the Tower was unnecessary.

Despite Federal's best efforts, the parties could not agree on a repair methodology. Federal's consultants advised that this type of damage is routinely repaired using the Exterior Method. Martin Dec. ¶ 15. Federal's Exterior Method would be: (1) safest, as construction would occur outside of the Building and away from students; (2) efficient, as it would reduce costs while using an established methodology; and (3) approved by the New York City Department of Buildings (the "DOB"). *Id.* ¶¶ 16-18; Declaration of Daniel J. Hogan ("Hogan Dec.") ¶¶ 11-12, 18, 21-22, 53-54. Coral insisted on an elaborate plan to repair the Wall using the Inside-Out Method. However, as Federal's consultants noted, the Inside-Out Method is physically impossible. Hogan Dec. ¶¶ 11, 34-39; Martin Dec. ¶¶ 20-27. ***Tellingly, in the six years since this loss, Coral has not filed a single plan, requested any permit, or in any way commenced repairs.*** Hogan Dec. ¶ 55. Federal and Coral had reached an impasse as to which repair methodology to employ.

The Policy clearly delineates Federal's coverage obligations and the mechanism to resolve disagreements over the value of the loss. The Policy provides Federal's coverage obligations as follows: at Federal's option, it will either: (1) pay the value of the damaged property; (2) pay the cost of repairing the damaged property; (3) take all or any part of the property at an agreed or

appraised value; or (4) repair, rebuild or replace the property with other property of like kind and quality. Rudoshko Dec. ¶ 22. When Coral demanded appraisal under the Policy, Federal asked to value both the Exterior Method and Coral's Inside-Out Method so Federal could properly assess its obligations under the Policy. *Id.* ¶¶ 18-19. Federal expressly reserved its rights pertaining to the methodology dispute and the related coverage issues. *Id.* ¶ 20. Unfortunately, Coral's actions fatally compromised the entire appraisal process.

Misconduct during the appraisal process mandates vacatur of the Award. First, Coral's attorney demanded that Federal refrain from communicating with Federal's appraiser. *Id.* ¶ 26. Nonetheless, Coral's executive, David Podolsky, actively participated in the appraisal alongside Coral's estimator, Ken Wilson, all but supplanting Coral's selected appraiser, Charles Murray. Martin Dec. ¶ 41. Mr. Podolsky's impassioned pleas to the panel swayed the scope of the Appraisal Award, while Mr. Wilson injected additional claims never presented to Federal during the adjustment. *Id.* ¶¶ 42-44, 54-60. Mr. Podolsky implored Federal's appraiser to "settle" the dispute, rather than complete the appraisal. *Id.* ¶¶ 61-62. The umpire agreed, encouraging Federal's appraiser to discuss settlement with Mr. Podolsky. *Id.* ¶ 63. Unsurprisingly given Coral's intervention in the appraisal process, the umpire acknowledged feeling "pressure" to end the process. *Id.* ¶ 65. As a result, the umpire simply took Coral's claim, arbitrarily reduced line items in the estimate, and issued the Award. *Id.* ¶¶ 67-70, 75-78.

## III.  <u>MOTION TO VACATE</u>

### A.  <u>Legal Standard</u>

Judicial "review of appraisals is governed by different and broader standards" than those governing judicial review of arbitrations. *Clark v. Kraftco Corp.*, 323 F. Supp. 358, 360 (S.D.N.Y. 1971). An insurer "need not establish one of the grounds set forth in New York CPLR § 7511—

governing <u>arbitration</u>—to vacate or modify an <u>appraisal</u> award." *Zarour v. Pac. Indem. Co.*, No. 15-CV-2663 (JSR), 2017 WL 946332 (S.D.N.Y. Feb. 22, 2017). That is because unlike arbitration, "the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action." *In re Delmar Box Co.*, 127 N.E.2d 808, 811 (N.Y. 1955); *Penn Cent. Corp. v. Consol. Rail Corp.*, 436 N.E.2d 512, 516 (N.Y. 1982). New York law mandates vacatur of appraisal awards for misconduct in the process and failure to comply with the submission.

Under New York law, misconduct during the appraisal process mandates vacatur of any resulting award. *Clark*, 323 F. Supp. at 360; *Gervant v. New England Fire Ins. Co.*, 118 N.E. 2d 574, 577 (N.Y. 1954). The following factors, "would vitiate an appraisal: 'any inference of finding that the appraisal was not honestly made in good faith, and, under the circumstances, with sufficient thoroughness, and by following the ordinary and only tests that could be applied.'" *Clark*, 323 F. Supp. at 360 (quoting *Cohen v. Atlas Assur. Co.*, 148 N.Y.S. 563, 566 (App. Div. 1st Dep't 1914)). Appraisal awards must also be vacated when the appraisers and umpire failed to comply with the policy or applicable law. *See Gansevoort Holding Corp. v. Palatine Ins. Co.*, 170 N.Y.S.2d 171 (Sup. Ct. N.Y. Cty. 1957), *aff'd*, 181 N.Y.S.2d 172 (App. Div. 1st Dep't 1958); *Zarour*, 2017 WL 946332, at *2. The New York statute governing insurance appraisals provides:

> An appraisal shall determine the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy and shall proceed pursuant to the terms of the applicable appraisal clause of the insurance policy and not as an arbitration. Notwithstanding the provisions of this subsection, an appraisal shall not determine whether the policy actually provides coverage for any portion of the claimed loss or damage.

N.Y. INS. L. § 3408(c) (McKinney 2018). Appraisal awards that fail to comply with the terms of the submission are not entitled to a presumption of validity. *See Gansevoort*, 170 N.Y.S.2d at 174.

As will be shown below, the Award should be vacated for misconduct in the appraisal process and failure to comply with the submission.

The Award should be vacated even under the higher burden of vacating an arbitration award, which Federal need not prove. As set forth above, the grounds for vacating appraisal awards are substantially broader than those for arbitration. An arbitration award must be vacated if the court finds that a party's rights were prejudiced by: (1) "corruption, fraud or misconduct in procuring the award"; (2) "partiality of an arbitrator appointed as a neutral"; (3) "an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made"; and (4) failure to follow applicable procedures. N.Y. C.P.L.R. § 7511(b) (McKinney 2018). As set forth below, the Appraisal Award should be vacated because Coral's misconduct during the appraisal process biased the Appraisal Award and prejudiced Federal's rights.

**B. <u>Argument</u>**

The Appraisal Award should be vacated because the appraisal process and resultant award were riddled with errors and improprieties. Specifically, the Appraisal Award should be vacated for each of the following reasons: (1) misconduct in the appraisal process biased the Award; (2) the appraisal failed to comply with New York law; (3) the Award was not issued in accordance with the Policy; and (4) the Award is wholly irrational.

### 1. *<u>The Appraisal Was Riddled with Misconduct</u>*

The Appraisal Award should be vacated in its entirety because the appraisal process was riddled with misconduct. Coral's actions during the appraisal materially prejudiced Federal's rights by increasing the scope of the Appraisal Award. Such misconduct included impassioned and *ex parte* pleas from Coral's executive, Coral's injection of an additional claim for water

damage, and Coral's push to settle rather than appraise the loss.  Moreover, Federal's appraiser was denied the opportunity to be heard.  For these reasons, the Appraisal Award should be vacated.

### a) *Coral's Misconduct During the Appraisal*

The Appraisal Award should be vacated because Coral's misconduct biased the Award and prejudiced Federal's rights.  Appraisal awards must be vacated for evidence of "any inference of finding that the appraisal was not honestly made in good faith, and, under the circumstances, with sufficient thoroughly, and by following the ordinary and only tests that could be applied." *Clark v. Kraftco Corp.*, 323 F. Supp. 358, 360 (S.D.N.Y. 1971); *see also* N.Y. C.P.L.R. 7511.  Here, there is ample evidence that Coral's misconduct materially prejudiced Federal's rights.  First, an impassioned, *ex parte* plea by Coral executive David Podolsky to the panel increased the scope of the Award.  Second, a new claim of water damage allegedly resulting from the 2012 loss, belatedly reported by Coral's estimator **directly to the appraisal panel**, also increased the scope of the Award.  Third, Coral and the umpire encouraged Federal's appraiser to "settle" directly with Mr. Podolsky rather than complete the appraisal.  Ultimately, the umpire felt "pressure" to end the appraisal, and simply accepted Coral's claim with arbitrary discounts.  Each of these improprieties increased the scope of the Appraisal Award and materially prejudiced Federal's rights.

First, Mr. Podolsky's *ex parte* plea to the panel increased the scope of the Appraisal Award.  Although Coral's attorney demanded that Federal's representatives refrain from communicating with the appraisal panel, Mr. Podolsky made a highly emotional appeal to the panel to consider *convenience* of the students.  Rudoshko Dec. ¶ 26; Martin Dec. ¶ 43.  In addition, Mr. Podolsky argued that the students are entitled to have the temporary Tower—in addition to the permanent staircase and the elevators—fully *air-conditioned* and lead directly to the lobby.  Martin Dec. ¶ 44.  Federal had no opportunity to explain that its Exterior Method would be safest, as construction

would occur outside the building and away from students, and that the students had two other means of egress: the elevators and the other permanent stairwell. Nowhere in the Policy is Federal obligated to provide a multi-million-dollar, air-conditioned Tower as part of the repairs. Nonetheless, as a result of Mr. Podolsky's plea, the umpire irrationally included the air-conditioned, temporary Tower in the Award, in derogation of the Policy. *Id.* ¶ 54. This misconduct requires vacatur of the Award.[1]

Second, Coral's injection of a new claim into the appraisal increased the scope of the Award. On April 16, 2018, over five years after the loss, Coral first alleged that the loss caused water damage to the Building. Coral's estimator, Ken Wilson, reported this claim ***directly to the appraisal panel***: "Due to heavy rains yesterday and this morning the building . . . took on water in several areas of the building." *Id.* ¶ 57. Federal advised that this new claim must be submitted through normal reporting channels, and should ***not*** be considered in the appraisal.[2] *Id.* ¶ 58. Nonetheless, the umpire considered this new claim to increase the scope of repairs. *Id.* ¶¶ 59-60 ("Given the recent water penetration in the building, I am less willing than I previously might have been to consider removing the first floor from the scope . . . ."). Coral's improper injection of this new claim into the appraisal increased the scope of repairs, materially prejudicing Federal's rights.

Third, Mr. Podolsky pressured the umpire to have Federal engage in settlement discussions rather than complete the appraisal. In January 2018, Mr. Podolsky made multiple pleas—to Federal's appraiser individually, to Federal's appraiser together with the umpire, and to the entire panel—to "settle." *Id.* ¶ 62. Then, the umpire privately pressed Mr. Podolsky and Federal's

<hr>

[1] Further, as discussed *infra* Section IV.B.1., including the Tower constituted an improper coverage determination also mandating vacatur or modification of the Appraisal Award.
[2] The Policy contemplates appraisal ***only*** when the parties disagree on a claim. Rudoshko Dec. ¶ 21. Reporting new claims during the appraisal process is not contemplated. Consideration of this new claim in the appraisal shows: (1) failure to comply with the submission, as described *infra* Section III.B.3.; and (2) Coral's misconduct in procuring the award. Each is a ground requiring vacatur of the Award.

appraiser to discuss settlement in lieu of an appraisal award. *Id.* ¶ 63. Federal's appraiser was there to appraise the loss and had no authority to discuss settlement. *Id.* ¶ 64. The umpire subsequently advised Federal's appraiser that he was feeling "pressure" to end the process. *Id.* ¶ 65. Federal's appraiser reminded the umpire of his duties, noting that he should not be feeling any pressure. *Id.* ¶ 66. Shortly thereafter, the umpire accepted Coral's estimate of the loss—with some arbitrary, unexplained reductions—and issued the Appraisal Award. *Id.* ¶ 67. Clearly, Coral's actions pressured the umpire to encourage settlement rather than properly complete the appraisal.

### b) *Violation of Federal's Fundamental Procedural Rights*

The Appraisal Award should be vacated in its entirety because the panel denied Federal's appraiser the opportunity to be heard. According to Coral's counsel, "The right of a party to have appraisers receive all pertinent evidence offered is a fundamental procedural right . . . and any conduct to the contrary by the company appraiser or umpire may invalidate an award." JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF INSURANCE APPRAISAL 479 (3d ed. 2015). Policy language requiring the appraisers to submit their differences to the umpire "carrie[s] with it the clearest implication of duty on his part to examine and consider the appraisement of each in arriving at his own determination." *Strome v. London Assur. Corp.*, 47 N.Y.S. 481, 483 (App. Div. 2d Dep't 1897), *aff'd*, 57 N.E. 1125 (N.Y. 1900). An award must be set aside when an umpire acts in a hasty manner in performing his duties. *Gervant v. New England Fire Ins. Co.*, 118 N.E. 2d 574, 577 (N.Y. 1954) (vacating appraisal award for the panel's refusal to consider evidence of the insurer's appraiser). The panel's failure to consider evidence provided by Federal's appraiser materially prejudiced Federal's rights. Federal's appraiser was repeatedly denied the opportunity to be heard. As instances of this type of misconduct are too numerous to list here, Federal provides the following examples.

First, Federal's appraiser was denied access to crucial documents. For example, from the outset, Federal's appraiser advised that Coral's Inside-Out Method was impossible to perform. Coral stated that it had construction details depicting how the work would be done. Federal's appraiser requested copies of those details. Martin Dec. ¶¶ 21-22. Coral never provided any such details. *Id.* ¶ 23. In an email dated April 23, 2018, Federal's appraiser advised the umpire: "Despite my repeated requests, I have not been provided with any information upon which I can make an informed evaluation. This is an error in the process." *Id.* ¶ 24. To date, Coral has provided no construction detail explaining how the Inside-Out Method could be performed. *Id.* ¶ 25. On the contrary, Federal provided evidence, including a sworn statement from its registered architect, that the Inside-Out Method "is **not physically possible**." *Id.* ¶ 27; Hogan Dec. ¶ 56, Ex. 8 (emphasis in original). Denying Federal's appraiser critical documents necessary for a proper appraisal is clear misconduct in the appraisal process.[3]

Second, the panel failed to consider evidence of scaffolding costs provided by Federal's appraiser. Federal's appraiser advised the umpire that the costs Coral included for scaffolding were so inflated that they must be erroneous. Martin Dec. ¶ 72. On April 6, 2018, he wrote:

> [A]s an expert in construction I can say that a 15' swing stage as a matter of standard industry practice typically rents for approximately $6,000 per month. In addition to the rental there are delivery and removal charges of approximately $3,000, set-up and dismantle charges of approximately $8,000, and if an operator is included for 4 days, $4,000. . . . .
>
> If you are persuaded to recommend a value other than described above, kindly share with us the specific facts, data, or reasoning that form the basis of your opinion.

*Id.* ¶ 73. **The umpire never explained his reasoning.** *Id.* ¶ 74. Upon receipt of the Award, it included Coral's $512,000 scaffolding estimate, arbitrarily reduced to $300,000 without

---

[3] Apart from that, vacatur is also mandated because the Inside-Out Method is wholly irrational, *see infra* Section III.B.4., and the appraisal failed to value the Exterior Method, *see infra* Section III.B.3.e.

explanation.[4]  *Id.* ¶ 75.  Disregarding the evidence of Federal's appraiser and arbitrarily reducing numbers is misconduct in an appraisal.

Finally, the panel disregarded Federal's appraiser when he noted additional factors that must be considered when determining ACV.  Under New York law, ACV is determined using the broad evidence rule, which requires consideration of every factor available.  *Gervant,* 118 N.E.2d at 577 (citing *McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902, 905-06 (N.Y. 1928)).  In *Gervant*, the Court of Appeals vacated the appraisal award because the panel did not consider evidence of factors that should be considered in an ACV analysis.  *Id.*  The Court of Appeals determined that this was misconduct, in a legal sense, requiring vacatur of the award.  *Id.*  In the Award, the sum total of the analysis rendered by the panel was: "no betterment."  Rudoshko Dec. Ex. 3.  Although "no betterment" may be the standard for determining ACV in other jurisdictions, it is clear that this appraisal panel failed to consider every factor available to determine ACV under the broad evidence rule.  Failure to consider all of the elements necessary to determine ACV under New York law is clear misconduct.  For the reasons set forth above, the Appraisal Award should be vacated in its entirety because the panel denied Federal's appraiser the opportunity to be heard.

**2.  *The Appraisal was Not Conducted in Accordance with New York Law.***

The Appraisal Award should be vacated because it failed to comply with New York law. New York Insurance Law section 3408(c) provides:

> An appraisal shall determine the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy and shall proceed pursuant to the terms of the applicable appraisal clause of the insurance policy and not as an arbitration.  Notwithstanding the provisions of this subsection, an appraisal shall not determine whether the policy actually provides coverage for any portion of the claimed loss or damage.

---

[4] The Award should also be vacated for failure to explain adjustments.  *See infra* Section III.B.2.c.

N.Y. INS. L. § 3408(c). Appraisal awards must be vacated "to the extent that an appraisal decides issues beyond one of these statutorily-prescribed areas." *Zarour v. Pac. Indem. Co.*, No. 15-CV-2663 (JSR), 2017 WL 946332, at *2 (S.D.N.Y. Feb. 22, 2017). This appraisal violated New York law for, *inter alia*, failure to: (1) properly determine ACV and RCV; (2) specify the extent of damage; (3) explain adjustments; and (4) value the loss as specified in the Policy.[5]

### a) *Failure Properly to Determine Actual Cash Value and Replacement Cost*

The Appraisal Award should be vacated for failure properly to determine ACV and RCV. By statute, New York law requires that an appraisal determine ACV **and** RCV. N.Y. INS. L. § 3408(c). Here, the Award sets forth only a single figure that appears under the ACV column. Rudoshko Dec. Ex. 3. However, the Award states that "[t]he building damage is a repair to a small part of the building and therefore not subject to depreciation as there was no betterment to the building." *Id.* That statement is false, as the repairs would better the Building as detailed *infra* Section IV.B.2. It also misapplies the law. New York law determines ACV by the broad evidence rule, under which depreciation is only one factor to be considered. *McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902, 904-05 (N.Y. 1928). This is further evidence of the haste that was used to bring this appraisal process to conclusion. Thus, the Appraisal Award effectively sets forth only RCV, and should be vacated for failure to properly determine both ACV and RCV.

The Appraisal Award should also be vacated because its failure to identify ACV leaves Federal unable to determine its obligations under the Policy. An appraisal award must be vacated where the umpire "so imperfectly executed it that a final and definite award upon the subject matter submitted was not made." N.Y. C.P.L.R. § 7511(b)(iii). The Policy allows recovery of RCV only if repairs are made as soon as reasonably possible. Rudoshko Dec. ¶ 22. Because repairs have not

---

[5] This violation of New York law is discussed *infra* Sections III.B.3., IV.

been made as soon as reasonably possible, Coral cannot recover RCV. However, no proper value for ACV is provided in the Award. Thus, the Appraisal Award is not "final and definite," and should be vacated.

### b) *Failure to Specify the Extent of Damage*

The Appraisal Award should be vacated because it fails to specify the extent of damage. New York law requires that an appraisal determine "the extent of the loss or damage." N.Y. INS. L. § 3408(c). Here, the Award failed to identify *any* damage. For example, the Award did not determine how much of the Wall was damaged, how many floors require demolition, which rooms are damaged, etc. This failure to specify the extent of damage mandates vacatur of the Award.

### c) *Failure to Explain Adjustments*

The Appraisal Award should be vacated for failure to explain adjustments. "An appraisal award is expected to set forth basic explanations and adjustments, including the necessary facts, figures and calculation to account for any adjustments." WILKOFSKY, *supra*, at 514; *John P. Burke Apartments, Inc. v. Swan*, 528 N.Y.S.2d 718, 720 (App. Div. 3d Dep't 1988). The failure to do so requires vacatur of the appraisal award. *John P. Burke*, 528 N.Y.S.2d at 720. In *John P. Burke*, the Appellate Division found that the appraisal was properly rejected for the umpire's failure "to set forth the location of the comparable sales, the names of other apartments in the same area of the project which could be used as comparables for market value, any dollar and cents adjustments to the subject sale and any factor he considered relevant to such necessary adjustments." *Id.* When an appraisal makes conclusions without supporting calculations, it is impossible to review the resultant award, rendering it insufficient. *Id.*

Similarly, the Appraisal Award fails to set forth any explanations. The umpire was feeling "pressure" to come up with a final award quickly. Martin Dec. ¶ 65. Thus, he took Coral's claim

and made arbitrary reductions. *See id.* ¶¶ 67-70; Rudoshko Dec. Ex. 3. For example, Coral's claim includes $214,135 for electrical labor and materials. Martin Dec. ¶ 76. The umpire arbitrarily reduced that claim to $190,000, with no explanation of factors he considered. *Id.* Likewise, Coral's claim includes $1,042,995 for the construction of the Wall using a copper panel system. *Id.* ¶ 78. The umpire reduced that claim to $900,000, again with no explanation. *Id.* Regarding the Extra Expense portion of the Appraisal Award, the umpire admitted: "I eliminated any expense that ***appeared to be*** related to litigation or advocacy as opposed to consulting (and then ***I discounted a bit***)." *Id.* ¶ 77, Ex. 7 (emphasis added). Simply "discount[ing] a bit" does not provide the necessary facts, figures, and calculations to account for any adjustments. The failure to explain adjustments mandates vacatur of the Appraisal Award.

### 3. *The Appraisal was Not Conducted in Accordance with the Policy.*

The Appraisal Award should be vacated because the appraisal was not conducted in accordance with the Policy. Appraisal awards must be vacated where "the appraisers and umpire have [not] substantially complied with the terms of the submission." *See Gansevoort Holding Corp. v. Palatine Ins. Co.*, 170 N.Y.S.2d 171, 174 (Sup. Ct. N.Y. Cty. 1957), *aff'd*, 181 N.Y.S.2d 172 (App. Div. 1st Dep't 1958); *see also Rice v. Ritz Assocs.*, 450 N.Y.S.2d 7, 8 (App. Div. 1st Dep't 1982), *aff'd*, 447 N.E.2d 58 (N.Y. 1983) (In determining whether to set aside an appraisal award, "[t]he issue is simple: was the appraisal arrived at in accordance with the procedures set out in the contract . . . ?"); *Allstate Ins. Co. v. Kleveno*, 438 N.Y.S.2d 384, 386 (App. Div. 2d Dep't 1981); N.Y. C.P.L.R. § 7511(b). "The policy under which the appraisers were selected [i]s the source and limit of their authority, and the award, to be binding, must conform to the submission." *Mizrahi v. Nat'l Ben Franklin Fire Ins. Co.*, 37 N.Y.S.2d 698, 702 (City Ct., Kings Cty. 1942) (citations omitted); *see also Strome v. London Assur. Corp.*, 47 N.Y.S. 481, 483 (App. Div. 2d

Dep't 1897), *aff'd*, 57 N.E. 1125 (N.Y. 1900). According to Coral's counsel, "[i]t is crucial for the appraisers and umpire to fully comprehend and implement the value provisions of the specific policy . . . [, as it] will define the rights of the parties, subject to statute." WILKOFSKY, *supra*, at 489. The appraisal failed to comply with the Policy by: (1) including costs not covered under the Policy; (2) using a broader valuation standard to determine the amount of loss; (3) considering claims never submitted during the adjustment; (4) failing to value the property; and (5) failing to value the Exterior Method.

### a) *Improper Inclusion of Uncovered Costs*

The Appraisal Award should be vacated in its entirety because it improperly includes costs not covered under the Policy. As explained *infra* Section IV., the appraisal improperly determined coverage issues. The Award reflects these coverage determinations by including costs not covered under the Policy. By including these uncovered costs, the panel exceeded its authority under the Policy and New York law, mandating vacatur of the Award.

### b) *Failure to Value the Damage as Provided in the Policy*

The Appraisal Award should be vacated because the appraisal failed to value the damage as provided in the Policy. In particular, the panel awarded costs to minimize inconvenience associated with repairs—a standard provided nowhere in the Policy. This alteration of the Policy standard for calculating the amount of loss constitutes a coverage determination. The Policy covers the lower of: (1) "The cost to replace the lost or damaged property with other property: (a) Of comparable material and quality; and (b) Used for the same purpose," or (2) "The amount actually spent that is necessary to repair or replace the lost or damaged property." Rudoshko Dec. ¶ 22. Rather than determining the amount of the Award based on this standard, the panel valued the cost of repairing the damaged property in the way supposedly most convenient for the students.

Martin Dec. ¶¶ 43, 54.  This expanded the scope of coverage to encompass additional costs not covered under the Policy.

### c)  *Improper Consideration of Claims Not Submitted during the Adjustment*

The Appraisal Award should be vacated because it improperly considered claims not submitted during the adjustment.  The Policy contemplates appraisal to value only those claims about which the parties previously disagreed.  Rudoshko Dec. ¶ 21.  As explained *supra* Section III.B.1.a., a new claim of water damage, submitted for the first time during the appraisal, increased the scope of repairs.  Further, the Award includes new expenses Coral incurred during the appraisal.  *See infra* Section IV.B.4.  The Policy does not contemplate the submission of new claims to the appraisal.  As such, the Award should be vacated for improperly considering these new claims.

### d)  *Failure to State Pre-Loss Value of the Property*

The Appraisal Award should be vacated because it failed to "state separately the value of the property and the amount of loss," as required under the Policy.  Rudoshko Dec. ¶ 21.  This policy requirement "operate[s] as a check" on the appraisal process, to validate "the method by which the arbitrators ascertained the loss."  *Mizrahi v. Nat'l Ben Franklin Fire Ins. Co.*, 37 N.Y.S.2d 698, 702–03 (City Ct. Kings Cty. 1942).  Failure to provide the value of the property means "that the award is improper in form, ineffectual because lacking in vital particulars and, hence, invalid."  *Id.*  Thus, the Appraisal Award should be vacated for failure to state the value of the property.

### e)  *Failure to Value the Exterior Method*

The Appraisal Award should be vacated because it failed to value the Exterior Method.  Federal agreed to appraisal only if it would value both Coral's impossible Inside-Out Method, and

Federal's well-established Exterior Method. Rudoshko Dec. ¶ 19. However, the panel refused to consider the Exterior Method. Martin Dec. ¶¶ 32-35. Coral demanded that only the Inside-Out Method be valued: "The Coral policy does not insure [the neighbor]. I will not agree to any investigation for access from any location other than [the Building]. Coral has total control of their property and needs no outside interference with the repairs to their own building." *Id.* ¶ 33; Ex. 5. Coral steadfastly refused to value the Exterior Method or to cooperate with its neighbor in effecting the Exterior Method. *Id.* ¶¶ 32-35. Coral's petty refusal prevented the appraisal from valuing the Exterior Method. *Id.* The Appraisal Award should be vacated because it failed to comply with the submission, which required valuation of both methods.

### 4. *The Appraisal Award Should be Vacated because It Is Wholly Irrational.*

Finally, the Appraisal Award should be vacated because it is based on a repair method that is wholly irrational. Unsurprisingly, there is no indication that even a single project has ever been undertaken using an Inside-Out Method. Hogan Dec. ¶¶ 50-51; Martin Dec. ¶ 20. This is because it is physically impossible to erect and construct a waterproof wall from the Inside-Out. Hogan Dec. ¶¶ 11, 34-39, Ex. 8. As discussed *supra* Section III.B.1.b., not even Coral can explain the feasibility of its Inside-Out Method. The Award should be vacated because the Inside-Out Method is impossible to perform.

Finally, even if the Inside-Out Method were physically possible, it would not be approved by the DOB. Hogan Dec. ¶ 44. Construction projects in New York require DOB approval. *Id.* ¶ 45. The DOB has discretion to approve plans that employ established methods. *Id.* ¶¶ 46-48. Methods are considered "established" if they appear in certain publications on which the DOB relies. *Id.* ¶ 49. A methodology not appearing in these sources will normally be rejected by the DOB. *Id.* ¶¶ 47-49, 52. Registered Architect Daniel Hogan has reviewed these sources and

determined that the Inside-Out Method has never been published. *Id.* ¶ 50. By contrast, the Exterior Method reflects established methodology that is widely used throughout the United States. *Id.* ¶ 53. Thus, the DOB would reject the Inside-Out Method. *Id.* ¶ 52. For this reason, and for the reasons explained above, Federal respectfully requests that this Court vacate the Appraisal Award in its entirety.

## IV. <u>ALTERNATIVE MOTION TO MODIFY THE AWARD</u>

### A. <u>Legal Standard</u>

Appraisal awards must be modified to correct errors and to remove costs not covered under the policy. After appraisal, the insurer "may later decide that [certain] claims do not come within the scope of plaintiffs' insurance policy coverage, deciding which, if any, of the losses or damages suffered, is subject to reimbursement may be resolved later at trial." *Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*, No. 02 CIV. 6741 (HB), 2003 WL 1744288, at *5 (S.D.N.Y. Mar. 31, 2003) (citing *In re Delmar Box Co.*, 127 N.E.2d 808, 811 (N.Y. 1955)). The insurer "is not obligated to pay the full amount—or for that matter, any amount—of an appraisal award, which may be reduced or denied by policy exclusions and limitations." *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 711 S.E.2d 114, 117 (N.C. 2011). "[T]he scope of coverage provided by an insurance policy is a purely legal issue that cannot be determined by an appraisal, which is limited to factual disputes over the amount of loss . . . ." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 503 F. Supp. 2d 699, 702 (S.D.N.Y. 2007), *aff'd as modified*, 600 F.3d 190 (2d Cir. 2010) (modifying appraisal award to exclude amount granted under "Extended Recovery" provision as repairs had not been made); *see also D.R. Watson Holdings, LLC v. Caliber One Indem. Co.*, 789 N.Y.S.2d 787, 787 (App. Div. 4th Dep't 2005) (modifying award to be ACV instead of RCV because repairs had not been

made).  As set forth below, the Award should be modified to remove costs not covered by the Policy.

**B.  Argument**

As discussed *supra* Section III., the Appraisal Award should vacated in its entirety for abundant improprieties.  In the alternative, the Appraisal Award should at a minimum be modified to correct mistakes and remove costs clearly not covered under the Policy.

*1.  **The Appraisal Award Should be Modified to Remove the Tower.***

To the extent the Appraisal Award is not vacated, it should be modified to remove costs associated with the Tower.  First, the Tower is not covered because repairs have not been made within two years of the loss.  Second, the Tower is unnecessary for repairs.  Finally, even if a staircase were required, the Tower goes far beyond what is required.  For each of these reasons, the Award should be modified to remove the $2,176,888 awarded for the Tower.[6]

The Appraisal Award includes costs for a Tower not covered under the Policy.  The Policy generally excludes increased costs attributable to enforcement of an ordinance or law regulating the repair of property.  Rudoshko Dec. ¶ 23.  An endorsement provides a limited grant of such coverage, but subject to strict limitations.  *Id.* ¶ 24.  Federal "will not pay for the increased cost of construction: (1) Until the property is actually repaired or replaced, at the same or another premises; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years."  *Id.*  The damage occurred on December 5, 2012, but to this day, no repairs have been made.  Thus, repairs have not been "made as soon as reasonably

---

[6] This figure includes the following categories in the Appraisal Award: electrical (approx. $38,000 (20% of $190,000)), exterior/general ($13,500), exterior stairway ($400,000), demolition – front ($110,000), demolition – remove stairway ($100,000), HVAC ($500,000), scaffolding ($300,000), site work/excavation ($25,000), associated general conditions (approx. $204,287), associated overhead and profit (approx. $338,157), and associated tax (approx. $147,944).  Martin Dec. ¶ 55; Rudoshko Dec. Ex. 3.

possible after the loss or damage, not to exceed two years." *Id.* Accordingly, the Tower is not covered, and the Appraisal Award should be modified to remove associated costs.

Coverage issues aside, the Tower is simply unnecessary. As explained more fully below, the need for a temporary staircase is predicated on Coral's impossible Inside-Out Method. *See* Martin Dec. ¶¶ 38-40; Hogan Dec. ¶¶ 23-24. Federal's Exterior Method would allow students to continue to use the existing staircase. Martin Dec. ¶¶ 45-47; Hogan Dec. ¶¶ 21-22. A steel barrier erected on the Wall would ensure student safety during construction. Martin Dec. ¶ 46; Hogan Dec. ¶¶ 13-14. This would have four benefits. First, students would be fully protected from any debris, impact, or other hazard associated with demolition or reconstruction. Martin Dec. ¶ 46; Hogan Dec. ¶ 14. Second, there would be no disruption to students, because the existing staircase would remain fully usable. Martin Dec. ¶¶ 46-47; Hogan Dec. ¶¶ 21-22. Third, dust and noise occurring inside the Building would be significantly reduced. Martin Dec. ¶ 46. Finally, there would be significant cost savings. Martin Dec. ¶ 46; Hogan Dec. ¶¶ 18-23. As the Tower is unnecessary, the Award should be modified to remove associated costs.

Even assuming *arguendo* that a temporary staircase were required, the Tower is grossly disproportionate to the DOB requirements, and its associated costs are not covered. A steel frame staircase, covered with a temporary roof and secured with netting, would ensure student safety and comply with all requirements (the "Steel Staircase"). Martin Dec. ¶ 49; Hogan Dec. ¶ 29. Steel Staircases are routinely used in construction projects throughout New York City. Martin Dec. ¶ 50; Hogan Dec. ¶ 31. The Policy provides that "coverage under this [Ordinance or Law] endorsement applies only in response to the ***minimum requirements*** of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement." Rudoshko Dec. ¶ 24 (emphasis added).

Thus, even if a temporary staircase were required, and such costs were covered, Coral's recovery would still be limited to the costs to comply with the "minimum requirements" of ordinance or law. The Tower vastly exceeds these requirements. Martin Dec. ¶¶ 48, 53; Hogan Dec. ¶ 27. For example, the Tower is air conditioned despite being a mere secondary means of egress. Martin Dec. ¶ 51. No law or ordinance mandates air conditioning a secondary means of egress. *Id.*; Hogan Dec. ¶ 28. Likewise, the Tower would require sidewalk excavation to support it. Martin Dec. ¶ 52; Hogan Dec. ¶ 26. The Steel Staircase would be perfectly secure and require no excavation of NYC sidewalks. Martin Dec. ¶ 52; Hogan Dec. ¶ 31. The Tower exceeds those costs necessary to comply with "the minimum requirements of the ordinance or law." Thus, the Award should be modified to remove the $2,176,888 granted for the Tower.

### 2. *The Appraisal Award Should be Modified to Reflect Depreciation and Upgrades.*

The Appraisal Award should also be modified to reflect depreciation and upgrades. The Award erroneously states that the "the building damage is a repair to a small part of the building and therefore not subject to depreciation as there was no betterment to the building." Rudoshko Dec. Ex. 3. However, the repairs *are* subject to depreciation, and multiple items in the Award will better the property. Martin Dec. ¶ 79. For example, the Appraisal Award includes, *inter alia*, a new HVAC system, repainting the Wall through the sixteenth floor, and a superior copper wall system to replace an old EIFS wall. Martin Dec. ¶¶ 80-81; Hogan Dec. ¶¶ 32-33. Federal's appraiser pointed this out to the umpire, but was ignored. Martin Dec. ¶¶ 81-82. Accordingly, the Award should be vacated for: (1) materially misstating that repairs would not better the Building; (2) failing to apply the broad evidence rule; and (3) refusing to consider Federal's appraiser's positions. In the alternative, it should be modified to remove depreciation and upgrades.

### 3. *The Appraisal Award Should be Modified to Remove Costs Not Sustained or Incurred Within the Policy-Prescribed Period.*

The Appraisal Award should be modified to remove costs not sustained or incurred within the period defined by the Policy. The Award improperly included uncovered "potential loss of rents and other related expenses to be incurred" (the "Unincurred Expenses"). Rudoshko Dec. Ex. 3. The Award states: "This element . . . is for loss of rental income during the period of repair and related reasonable and necessary expenses incurred during the repairs process." *Id.* The Unincurred Expenses have not been sustained or incurred. The Policy provides coverage for "Business Income" and "Extra Expense" that were sustained and incurred, respectively, during the "period of restoration." *See id.* ¶ 25. The "period of restoration" for Business Income and Extra Expenses ended on "[t]he date when the property at the described premises should [have been] repaired, rebuilt or replaced with reasonable speed and similar quality." *Id.* The Appraisal Award considers that repairs could be completed in 52 weeks.[7] Martin Dec. ¶ 37. Thus, the "period of restoration" ended at the latest in December 2013. Because the Unincurred Expenses have not been incurred, and the "period of restoration" expired five years ago, the Award improperly determined coverage when it included the Unincurred Expenses, mandating vacatur.

### 4. *The Appraisal Award Should be Modified to Correct Numerous Other Errors.*

In addition to the foregoing, the Appraisal Award should be modified to correct numerous other errors. Among others, Federal lists the following examples for the sake of brevity:

1. The Award includes $900,000 for construction of a new wall using Coral's Inside-Out Method, plus approximately $417,995 for associated markup.[8] Martin Dec. ¶ 82. The Award should be modified to remove these costs, as the Inside-Out Method is impossible to perform. *See supra* Section III.B.4.

2. The Award includes $725,000 for demolition of the Wall using Coral's Inside-Out Method, $50,000 for associated materials, and $75,000 for debris removal, plus

---

[7] Federal's consultants determined that repairs could be made in 12 weeks. Martin Dec. ¶ 17; Hogan Dec. ¶ 19.
[8] "Associated markup," as used herein, refers to a proportional percentage of the amounts awarded for general conditions, tax, and overhead and profit.

approximately $394,773 for associated markup. Martin Dec. ¶ 83. Coral's Inside-Out demolition is unsafe, as it would risk disturbing the stability of the neighboring structure, and unnecessary. *Id.*; Hogan Dec. ¶¶ 40-43.

3. The Appraisal Award includes $300,000 for scaffolding, plus approximately $139,332 for associated markup. Martin Dec. ¶ 87. This unexplained figure contradicts the evidence, as detailed *supra* Section III.B.1.b.[9]

4. The Award includes $75,000 to remove **one thousand cubic yards** of concrete debris, plus approximately $34,833 in associated markup. Martin Dec. ¶ 84. The hypothetical maximum amount of concrete debris that could ever be generated under the Inside-Out Method is **less than sixteen cubic yards**. *Id.* ¶¶ 85-86. The Award should be modified to correct this error.

5. The Appraisal Award erroneously states, "The amounts are NOT subject to deduction for any previous payments or policy deductible. Previous payments were for emergency repairs and the deductible was applied to those emergency repairs." Rudoshko Dec. Ex. 3. This is demonstrably false. Federal had made unallocated repair payments of $105,871.62, net of the $10,000.00 deductible. *Id.* ¶ 28. The Award should be modified to subtract prior payments.

6. The Appraisal Award includes $14,600 for invoices from A & B Engineering Land Surveying, P.C., for court appearances and land surveying. Rudoshko Dec. Ex. 3. This work was performed in connection with Coral's separate litigation against its neighbor. As such, these costs were not incurred to minimize the suspension of operations, as required under the Policy. *Id.* ¶ 25. The Award should be modified to remove these uncovered costs.

7. The Appraisal Award includes $61,250 for invoices from SR Harwood Consulting Engineering PC. *Id.* Ex. 3. These invoices are for engineering services purportedly performed from February 2013 to January 2018. Federal lacks sufficient information to ascertain whether these expenses are covered under the Policy. Invoices dated after the end of the "period of restoration" are not covered. *See supra* Section IV.B.3. Expenses not incurred to minimize the suspension of operations are likewise uncovered. *See* Rudoshko Dec. ¶ 25.

8. The Appraisal Award includes $125,000 for invoices from several third parties. *Id.* Ex. 3. The spreadsheet prepared by Rollins Accounting & Inventory Services, Inc. and annexed to the Appraisal Award claimed $283,872.50 for these invoices. It is unclear which costs comprise the $125,000 included in the Appraisal Award. Some claimed expenses are not covered because they were incurred after the "period of restoration." *See supra* Section IV.B.3. Others are not covered because they were not incurred to minimize the suspension of operations. *See* Rudoshko Dec. ¶ 25. The Award should be modified to remove uncovered expenses.

---

[9] Further, the umpire ignored Federal's appraiser when he pointed out this error, requiring vacatur of the Award. *See supra* Section III.B.1.b. Moreover, the umpire arrived at the scaffolding figure by discounting Coral's claim by over $200,000 without explanation, also mandating vacatur. *See supra* Section III.B.2.c.

9. The Award includes $13,500 for a new Duane Reade sign to be used during repairs, plus approximately $6,270 for associated markup. Martin Dec. ¶ 88. The Policy does not cover such expense.

10. The Award includes $24,765 for off-site storage, plus approximately $11,502 for associated markup. *Id.* ¶ 89. It is unclear why such storage would be required.

11. The Appraisal Award includes $225,000 for post-construction cleaning, plus approximately $104,499 for associated markup. *Id.* ¶ 90. At a minimum, this amount is substantially duplicative with the $500,000 in "general conditions." *Id.*

12. The Appraisal Award includes $500,000 for undefined "general conditions," plus approximately $143,750 for associated tax and overhead and profit. *Id.* ¶ 91. As these costs are not discussed or explained, Federal is uncertain why they were awarded.

13. The Appraisal Award includes $362,098 for tax, calculated at an 8.75% rate. *Id.* ¶ 92. Federal's appraiser informed the umpire that New York City will only tax the materials utilized in the repairs. *Id.* The umpire ignored him, and awarded tax on the full cost of repairs plus general conditions. *Id.*

14. The Appraisal Award includes $827,653 for overhead and profit, calculated at a 20% rate. *Id.* ¶ 93. At a minimum, this amount is substantially duplicative with the $500,000 in "general conditions." *Id.*

The foregoing errors further demonstrate that the Appraisal Award should be vacated in its entirety. If the Court finds modification more appropriate, the Appraisal Award should be modified, in whole or in part, to correct for all or some of the foregoing errors.[10]

## V.     CONCLUSION

For the foregoing reasons, Federal respectfully requests that this Court:

1. Vacate the Appraisal Award in its entirety;

   or, in the alternative,

2. Modify the Award to remove or recalculate all or any of the following costs:

   a. $2,176,888 for the Tower; and/or

   b. $1,317,995 for construction of a new copper wall using the Inside-Out Method; and/or

   c. $1,244,773 for demolition of the Wall using the Inside-Out Method; and/or

---

[10] To the extent the Award is upheld, it should be limited to the Inside-Out Method, and payable only after a plenary trial finds that method to be necessary. If Federal's Exterior Method is determined to be proper, the amount of loss must also be determined, as the appraisal failed to value the Exterior Method. *See supra* Section III.B.3.e.

d. $439,332 mistakenly calculated for scaffolding; and/or

e. $109,833 for removal of more concrete than exists in the Wall; and/or

f. $115,871.62 to account for Federal's prior payments and the deductible; and/or

g. The Unincurred Expenses awarded "as incurred"; and/or

h. $14,600 for invoices A&B Engineering & Land Surveying, P.C. and/or

i. $61,250 for invoices from SR Harwood Consulting Engineering PC; and/or

j. $125,000 for invoices from several third parties; and/or

k. $19,770 for a new Duane Reade sign during repairs; and/or

l. $36,267 for off-site storage; and/or

m. $329,499 for duplicative post-construction cleaning; and/or

n. $643,750 for undefined "general conditions"; and/or

o. $362,098 for tax, calculated at an 8.75% rate; and/or

p. $827,653 for overhead and profit;

and

3. For such other and further relief as the Court deems just and equitable.

Dated: December 21, 2018
New York, New York

Respectfully Submitted,

**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**

By:

*/s/ Charles J. Rocco*
Charles J. Rocco, Esq. (CR8646)
Ashley C. Vicere, Esq. (AV0612)
*Attorneys for Defendant*
*Federal Insurance Company*
40 Wall Street, 54th Floor
New York, New York 10005
Tel:     (212) 257-7100
Fax:     (212) 257-7199
crocco@fgppr.com
avicere@fgppr.com