UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CORAL REALTY, LLC, and CORAL CRYSTAL LLC,   Civil Action No.
                                            1:17-cv-01007
                    Plaintiffs,

        v.

FEDERAL INSURANCE COMPANY,

                    Defendant.
------------------------------------------------------------------------X

## DECLARATION OF GERARD R. RUDOSHKO

GERARD R. RUDOSHKO deposes and states the following under the penalty of perjury:

1. I am a general adjuster for FEDERAL INSURANCE COMPANY ("Federal"). As such, I am fully familiar with the facts and circumstances of this matter as set forth herein.

2. I submit this affidavit in support of Federal's Motion to Vacate or Modify the Appraisal Award in Whole or in Part.

3. This action stems from an insurance claim (the "Claim") by CORAL REALTY, LLC, and CORAL CRYSTAL LLC (collectively, "Coral") for damage sustained to its property located at 201 E 14th Street/129 Third Avenue, New York, New York 10003 (the "Building").

4. Federal insured the Building under a policy of insurance bearing policy number 009 9836120 00 (the "Policy"). A true and correct copy of the Policy is annexed hereto as **Exhibit "1."**

5. The Building was damaged on or about December 5, 2012, during construction of a neighboring structure (the "Loss").

6. Coral notified Federal of the Loss on February 21, 2013.

1

7. Federal retained Cliff Hyde of York Specialized Loss Adjusting ("Hyde") to investigate and adjust the Loss.

8. Hyde inspected the Building on February 26, 2013.

9. During the inspection, Hyde found minor damage to the walls in apartments 307A and 407A.

10. Federal asked to inspect the Building with its engineer and building consultant.

11. After repeated follow ups by Federal, Coral finally scheduled the inspection for December 9, 2014, two years after the Loss.

12. Coral attributed the delay to a separate litigation it had filed against its neighbor.

13. In August 2015, Coral submitted a $7.2 million estimate, which included approximately $3.8 million for a temporary stair tower (the "Tower").

14. Coral indicated that the Tower, which makes up more than half of Coral's repair estimate, was required by the building code.

15. Coral's estimate proposed an elaborate plan to repair the Wall from the inside of the Building (the "Inside-Out Method").

16. Federal advised Coral that the Inside-Out Method had not been shown to be feasible and the Tower was unnecessary.

17. Federal's consultants advised that a temporary exterior steel stair, having a temporary roof covering made of lightweight material and enclosed with orange netting, would satisfy building code requirements for a secondary means of egress.

18. On April 14, 2016, Coral demanded appraisal under the Policy.

19. On May 6, 2016, Federal agreed to appraisal provided that it would value <u>both</u> Coral's Inside-Out Method and Federal's Exterior Method, so that Federal could properly assess its obligations under the Policy. A true and correct copy of this letter is annexed hereto as **Exhibit "2."**

20. Federal expressly reserved its rights pertaining to the methodology dispute and the coverage issues.

21. The Policy's appraisal provision states:

* * *

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

* * *

E. **Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

* * *

2. **Appraisal**
    1. If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.
    2. If we or you fail to proceed with the appraisal of the covered loss after a written demand is made by either party, then either party may apply to a court having jurisdiction for an order directing the party that failed to proceed with the appraisal to comply with the demand for the appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such order.
    3. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

  **4.** Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

* * *

Exhibit 1, BUILDING AND PERSONAL PROPERTY COVERAGE FORM § E.2.; NEW YORK CHANGES § H; *see also* BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM § E.2.; NEW YORK CHANGES § I.

 22. The Policy's Loss Conditions section provides:

* * *

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

* * *

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

* * *

 **4.** **Loss Payment**

  **a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

   **(1)** Pay the value of lost or damaged property;

   **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

   **(3)** Take all or any part of the property at an agreed or appraised value; or

   **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

  We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

4

* * *

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

* * *

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

* * *

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

* * *

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

5

>    **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.
>
> **e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3),** subject to **f.** below:
>
>    **(1)** The Limit of Insurance applicable to the lost or damaged property;
>
>    **(2)** The cost to replace the lost or damaged property with other property:
>
>       **(a)** Of comparable material and quality; and
>
>       **(b)** Used for the same purpose; or
>
>    **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.
>
> If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.
>
> **f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.
>
> * * *

Exhibit 1, BUILDING AND PERSONAL PROPERTY COVERAGE FORM §§ E.4.a.; E.7.a.; G.3.a., d., e., f.

23. The Policy generally excludes increased costs attributable to enforcement of an ordinance or law regulating the repair of property. *See, e.g.*, Exhibit 1, BUILDING AND PERSONAL PROPERTY COVERAGE FORM §§ E.4.b.; E.7.b.; G.3.f.; CAUSES OF LOSS – SPECIAL FORM § B.1.a.; BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM § F.3.

24. The Policy's ORDINANCE OR LAW COMBINED COVERAGE endorsement provides a limited grant of such coverage, but subject to strict limitations. That endorsement states, in pertinent part:

6

\* \* \*

### ORDINANCE OR LAW COMBINED COVERAGE

\* \* \*

**B. Application of Coverage**

The Coverage provided by this endorsement applies only if both **B.1.** and **B.2.** are satisfied and is then subject to the qualifications set forth in **B.3.**

1. The ordinance or law:

    a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

    b. Is in force at the time of loss.

    But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

\* \* \*

**D. Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay:

\* \* \*

3. The increased cost to:

    a. Repair or reconstruct damaged portions of that building; or

    b. Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

    when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

    However:

    **(1)** We will pay increased construction costs only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

    **(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

7

* * *

**E. Loss Payment**

* * *

    **3.**    In addition to the loss in value of undamaged portions of a building, our remaining loss payments under this endorsement are limited as follows:

        **a.**    We will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

        **b.**    We will not pay for the increased cost of construction:

            **(1)**    Until the property is actually repaired or replaced, at the same or another premises; and

            **(2)**    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

        If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

        If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

* * *

**G.** Under this endorsement we will not pay for loss due to any ordinance or law that:

    **1.**    You were required to comply with before the loss, even if the building was undamaged; and

    **2.**    You failed to comply with.

* * *

Exhibit 1, ORDINANCE OR LAW COMBINED COVERAGE Endorsement.

25. The Policy's BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM states, in pertinent part:

\* \* \*

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

\* \* \*

**A. Coverage**

   **1. Business Income**

      Business Income means the:

         **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

         **b.** Continuing normal operating expenses incurred, including payroll.

\* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

\* \* \*

   **2. Extra Expense**

         **a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

         **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> **(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location;
>
> **(2)** Minimize the "suspension" of business if you cannot continue "operations".
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.
>
> * * *
>
> **F. Definitions**
>
> * * *
>
> **2.** "Operations" means:
>
>   **a.** Your business activities occurring at the described premises; and
>
>   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.
>
> **3.** "Period of restoration" means the period of time that:
>
>   **a.** Begins:
>
>   **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
>
>   **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
>
>   caused by or resulting from any Covered Cause of Loss at the described premises; and
>
>   **b.** Ends on the earlier of:
>
>   **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

  **(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

  **(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

  **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

* * *

**6.** "Suspension" means:

  **a.** The slowdown or cessation of your business activities; or

  **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

* * *

Exhibit 1, BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM; *see also id.* § C.3.

  26. After the appraisal began, Coral's counsel demanded that Federal refrain from communicating with Federal's appraiser.

  27. On May 9, 2018, Federal received an appraisal award signed by Coral's appraiser, Charles A. Murray, Jr., and the appraisal umpire, Michael Young (the "Award"). The Award incorporates by reference the following documents: (1) a spreadsheet comparing Coral's claim with the amounts awarded by the umpire; (2) an estimate by Coral's estimator, Ken Wilson of A.C.N.Y. Developers, which served as the basis for the Award; and (3) schedules of "Extra

Expenses" prepared by Rollins Accounting & Inventory Services, Inc. A true and correct copy of the Award and its attachments is annexed hereto as **Exhibit "3."**

28. Prior to appraisal, Federal had made unallocated repair payments of $105,871.62, net of the $10,000 deductible.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 12/21, 2018

Gerard R. Rudoshko