# EXHIBIT 2



6 Butler Place
Saratoga Springs, NY
12866
Tel:  (973) 404-1077
Fax: (518) 226-6042
Cliff.hyde@yorkrsg.com
www.yorkrsg.com

The strength of York
Experience, Leadership,
and Integrity

May 6, 2016

**Via E-Mail and First Class Mail**
Goodman-Gable-Gould/ Adjusters International
10110 Molecular Drive, Suite 300
Rockville, MD 20850

Attn:   Karl L. Denison, CPPA
          Executive Vice President

| | | | |
|---|---|---|---|
| RE: | **Insured** | : | **Coral Realty, LLC** |
| | **York File No.** | : | **YKFA-014828** |
| | **Claim Number** | : | **CHME-0707A9** |
| | **Policy Period** | : | **August 15, 2012 - 2013** |
| | **Policy No.** | : | **00998362100** |
| | **Loss Location** | : | **201 East 14th Street** |
| | | | **New York, NY 10013** |
| | **Date of Loss** | : | **December 5, 2012** |
| | **Type of Loss** | : | **Property Damage** |

Dear Mr. Denison,

This will respond to the demand for appraisal contained in your April 14, 2016 letter. To the extent your letter contains other allegations concerning the claim, they were either responded to in my letter of April 25, 2016, or will be addressed herein.

Although the policy does not specify a time period for selection of appraisers, we have responded by May 8, 2016 as you specifically requested in your letter (note, May 8 is a Sunday, therefore the response would be due May 9).

Certain of the issues involved in this claim can be submitted to the appraisal process. However, other issues involving e.g., policy coverage and policy loss payment provisions, cannot be submitted to the appraisal process.

Your April 14, 2016 letter makes a demand for payment based upon the exterior repair method, but does not otherwise specify the repair method that you propose be subject to the appraisal process. Our agreement to the appraisal process is premised upon and requires that the appraisal include consideration of all potential repair methods. For example, the appraisal process cannot only include valuation related to the insured's proposed method of repairing the north wall from the inside of the Coral building (which has yet to be demonstrated to be a feasible repair methodology). There are other repair scenarios that will need to be separately

York Risk Services Group, Inc.                                                                          May 6, 2016
Coral Realty, LLC
YKFA-014828
Appraisal Letter

Page 2 of 5

addressed and be subject to appropriate valuation, under the policy coverage limitations and within the permissible scope of the overall appraisal process. Again, our agreement to engage in the appraisal process envisions an evaluation by the appraisers and their consultants of all potential repair methodologies.

Although certain aspects of the insured's untested "inside out" repair methodology may be subject to the appraisal process, there are several other uncertainties present in that repair methodology. Those other uncertainties may preclude any final quantification in appraisal until e.g., actual site and field conditions are known with greater certainty, or actual repairs are made. For example, the extent to which concrete may have penetrated in part through the EIFS into areas other than Room 407 is unknown. Your letter does not explain how the appraisers are to quantify the costs associated with such concrete removal when the location and extent of that work is not presently known. It would appear that a final appraisal award which included those costs would be premature at this time, both for that practical reason, and also under the policy coverage and loss payment provisions discussed below.

Another possible repair methodology is related to the method proposed by the insured, but would account for an eventuality where any concrete removal to be performed from the interior of 129 3rd Ave becomes unnecessary to any significant degree. For example, if that concrete is removed from the exterior. This would leave any required "inside out" repair (if feasible) limited to a repair of the north EIFS wall from the inside.

As noted in my letter of April 25, 2016 and previously, there remains the exterior repair option, namely performing a repair from the exterior of the insured's north wall. There can be no reasonable dispute that an exterior repair would be the conventional, least costly, quickest, and most reliable method of securing a permanent repair.

The work permits for the concrete removal that would allow such an exterior repair were previously issued on April 1, 2016 by the New York City Department of Buildings following an internal DOB audit, then revoked as of April 14, 2016, and are now in a DOB audit once again. There is no indication those work permits have been permanently revoked, and that will not be known until the DOB audit process is concluded.

Therefore, we disagree with submitting this insurance claim to the appraisal process unless it includes all possible repair methods which may be utilized, including the exterior repair method. The exterior repair option is a separate repair methodology that the appraisal process must consider. As noted above, the pending DOB audit procedure will likely determine whether or not the exterior repair option is available. If available, the insured will be obliged to avail itself of it, either through a license agreement negotiated and paid for by Federal Insurance Company, or by the insured applying to the court for a license to perform the exterior repair from the neighboring property as allowed under the New York Real Property and Proceedings Law Section 881 (the reasonable cost of which would be paid by the insurer, as stated in my letter of April 25, 2016).

We also disagree with the statements made in your April 14, 2016 letter to the extent you allege that Federal Insurance Company was not entitled to rely upon the approvals given (or to be given) by the DOB for the concrete removal work. The DOB is the New York City agency expressly charged with, among other things, enforcing building safety issues and

York Risk Services Group, Inc.                                          May 6, 2016
Coral Realty, LLC
YKFA-014828
Appraisal Letter

Page 3 of 5

approving construction work permits. Neither you nor we have had access to all of the documentation and information upon which the DOB has based its decisions.

Other appraisal limitations exist, since appraisal cannot decide issues of coverage. For example, our meetings included discussion of significant increased costs claimed by the insured as allegedly necessary to comply with building code requirements applicable to the repair of the north wall. In general, the policy excludes from any loss payment the increased costs attributable to enforcement of any ordinance or law regulating the repair of property. However, under the policy's Ordinance or Law Combined Coverage endorsement, a limited grant of Ordinance or Law Coverage is provided, but subject to the limitation that "coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement". By way of example only, the insured's proposed exterior staircase is presented as being a "temporary" staircase, but accounts for some $3.7 million of the present repair estimate. The components of that staircase are or may be excessive as an "action or standard that exceeds actual [code] requirements". Determination of that coverage issue would not legally be allowed in the appraisal process.

Likewise, the policy contains loss payment provisions which limit the coverage available. By way of example only, Loss Payment Section E 2.a. provides that if property is being repaired "we will not pay more than the amount you would actually spend to repair or rebuild or reconstruct the building, but not for more than the …comparable quality of the original property insured."

Similarly, although the insured's claim has been submitted on a replacement cost basis, the Loss Payment provisions in the policy require that if "the property is **not** repaired or replaced,…we will not pay more than the actual cash value of the building at the time of loss" (original emphasis).  Therefore, any appraisal award would need to calculate and include a holdback or similar provision which deferred payment until the repair was actually done.

In our view, the appraisers would need to calculate the applicable methodologies and options within the limits of the appraisal process. Our counsel advises this type of procedure has been utilized and received court approval in other appraisal matters. This process would reserve each party's right to have a court decide any non-appraisable issues that remained in dispute. By engaging in the appraisal process, the insured and we would not be waiving those potential coverage issues.

Due to the several issues involved in calculating the permissible components of any appraisal award, we suggest it would be advisable for the appraisers, their consultants, and any umpire to review the above issues and to hopefully agree upon taking into account all of the potential repair methods.

With respect to the other issues raised in your April 14, 2016 letter, you demand that the insurer make an immediate payment based upon the $120,128.87 replacement cost estimate which DBI Building Consultants prepared, representing the estimated cost of the exterior repair option.

York Risk Services Group, Inc.                                            May 6, 2016
Coral Realty, LLC
YKFA-014828
Appraisal Letter

Page 4 of 5

     Your demand for such payment obviously acknowledges the continued potential viability of the exterior repair option, and we will forward such amount, less the $100,000 unallocated building advance previously paid. In the past we have discussed that the repair costs that we believe would be necessary, i.e., the exterior repair costs listed on this estimate, do not involve any factor to which we would apply depreciation. Nevertheless, Federal Insurance Company reserves the right to rely upon and factor into any future payment, any applicable policy provisions which apply concepts of e.g., depreciation, actual cash value, or which would require payments to be made for less than full replacement cost.

     Likewise, with respect to outstanding expenses, to the extent they can be agreed upon, the insurer will pay them outside of the appraisal process, otherwise they can be considered in the appraisal process, in accordance with the policy coverage limitations.

Subject to the above, Federal Insurance Company hereby designates as its appraiser:

     Mark L. Parisi
     White and Williams LLP
     1650 Market Street
     One Liberty Place, Suite 1800
     Philadelphia, PA 19103-7395
     Phone: (215) 864-7180
     Cell:   (215) 582-4604
     Email: parisim@whiteandwilliams.com
     http://www.whiteandwilliams.com/lawyers-MarkParisi.html

     Under the present circumstances the insurer must continue to reserve all rights which remain available under the policy or applicable law, recognizing that the contractual time to sue under the policy for this claim has previously been extended in writing.

                  Best regards,

                  *Clifford W. Hyde Jr.*

                  Clifford W. Hyde, Jr.
                  Executive General Adjuster

CC:    Gary Pettit
        Senior Property Claims Analyst
        York Risk Services Group, Inc.
        Via Email: gary.pettit@yorkrsg.com

        Rosner, Nocera & Ragone, LLP
        61 Broadway, Suite 10006
        New York, NY 10006
        Attn:  John Nocera
        Via Email:  jnocera@rnrlawgroup.com

York Risk Services Group, Inc.                                                May 6, 2016
Coral Realty, LLC
YKFA-014828
Appraisal Letter

Page 5 of 5


      Chubb Group of Insurance Companies
      PO Box 358
      Jamison, PA 18929
      Attn:  Mark Zimmerman, Sr. General Adjuster
      Via Email:  mzimmerman@chubb.com


eb:coral.update.ltr
05/06/2016