EXHIBIT "1"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------x  Index No.:
CORAL REALTY, LLC, and CORAL
CRYSTAL, LLC et al.,

                         Plaintiffs,          **VERIFIED**
            -against-                         **COMPLAINT**

FEDERAL INSURANCE COMPANY,

                         Defendant.
----------------------------------------x

    Plaintiffs, CORAL REALTY, LLC, and CORAL CRYSTAL,

LLC(hereinafter "CORAL"), by their attorneys, WILKOFSKY,

FRIEDMAN, KAREL & CUMMINS, as and for its Complaint, state upon

information and belief, as follows:

    **AS AND FOR A FIRST CAUSE OF ACTION (BREACH OF CONTRACT)**

    1. At all times herein mentioned CORAL REALTY, LLC, was an

is a limited liability company duly organized and existing

pursuant to the laws of the State of New York.

    2. At all times herein mentioned CORAL CRYSTAL, LLC, was an

is a limited liability company duly organized and existing

pursuant to the laws of the State of New York.

    3. Upon information and belief, Defendant was and is a

foreign corporation duly organized and existing under and by

virtue of the laws of the State of New Jersey.

4. Upon information and belief, Defendant is duly licensed and authorized to conduct business of insurance in the State of New York including the issuance of the policy that is the subject of this action.

5. This Court has jurisdiction of this action pursuant to CPLR 3001 and 3017(b).

6. Venue in this Court is proper under CPLR 503(a)(c).

7. An actual case and controversy of judiciable nature exists between the parties involving the right to an obligation of the parties under the FEDERAL INSURANCE COMPANY (hereinafter "FEDERAL") insurance contract.

8. Heretofore and on or about August 15, 2012, Defendant issued a certain policy of liability insurance wherein and whereby it insured Plaintiffs (hereinafter collectively "CORAL") under policy number 0099836120 00 for the policy period of August 12, 2012 through August 12, 2013, a copy of said policy annexed hereto as Exhibit "1."

9. Under the aforesaid policy, CORAL's properties, including the property located at 129 Third Avenue, New York, New York (hereinafter the "Subject Premises" and/or "129") were insured for, inter alia, property damage, business income and extra expense, ordinance or law combined coverage, arising out of "Direct physical loss or damage . . . from any Covered Cause of Loss."

2

10. On or about and after December 5, 2012, the aforementioned policy was in full force and effect.

11. On or about December 5, 2012, the Subject Premises suffered damage due to a covered peril.

12. Plaintiffs' premises at 129 Third Avenue was damaged as the result of work being performed at the adjacent premises 133 Third Avenue, New York, New York (hereinafter "133").

13. As a result of the damage to the premises, Plaintiffs have suffered losses covered under the policy of insurance in at least the sum of Seven Million Two Hundred Twenty-Five Thousand Seven Hundred Eight ($7,225,708.00) Dollars.

14. On or about August 20, 2015 Plaintiffs, through a representative, submitted a claim in the estimated amount of $832,364.00 to Defendant for anticipated Loss of Income and Extra Expenses arising out of the December 5, 2012 loss.

15. A Proof of Loss along with an estimate from Atlantic Estimating LLC. was submitted to Defendant for the sum of Seven Million Two Hundred Twenty-Five Thousand Seven Hundred Eight ($7,225,708.00) Dollars, less a Ten Thousand ($10,000.00) deductible. (A copy of said Proof of Loss is annexed hereto as Exhibit "2").

16. Defendant rejected the Proof of Loss that was tendered.(A copy of said letter dated August 28, 2015, rejecting the Proof of Loss is annexed hereto as Exhibit "3").

17. Defendant, through its representative, acknowledged coverage for the damages suffered to Plaintiffs' building at 129 Third Avenue. (Copies of letters, dated April 1, 2015 and August 28, 2015 establishing coverage are annexed hereto as Exhibits "4" and "3" respectively).

18. Defendant was provided with Plaintiffs' claim for incurred expenses of $439,635.89 on June 2, 2015.

19. The August 28, 2015 letter, in pertinent part, states: "Federal has acknowledged through York Risk Services that the December 2012 damage to the building represents an occurrence for which coverage is available under the policy..."

20. Such August 28, 2015 letter as well stated: "...Federal will pay the reasonable and necessary costs for the repair or replacement of the damaged property..."

21. Defendant did not pay Plaintiffs on the Proofs of Loss submitted.

22. At the time suit was commenced, Defendant had paid Plaintiffs but the sum of $15,871.62, net of depreciation and deductible. (See letter from Defendant's counsel dated April 1, 2015 annexed hereto as Exhibit "4"), as well as a second payment in the sum of One Hundred Thousand ($100,000.00) Dollars by check dated August 2, 2016.

23. A meeting was held at the site of the loss on April 7, 2015, attended, among others, by counsel for Defendant, Defendant's engineer, adjuster, and building consultant.

4

24. Defendant, through York Risk Services Group, first estimated the cost of repairs to Plaintiffs' premises occasioned by the December 5, 2012 incident at the figure of $15,871.62, net of depreciation and deductible.

25. Defendant conveyed to Plaintiffs' representative that its assessment of damages arising from the December 5, 2012 loss was the sum of One Hundred Twenty Thousand One Hundred Twenty-Eight and 87/100 ($120,128.87) Dollars. (A copy of said letter is annexed hereto as Exhibit "5").

26. Demand was made upon Defendant to pay the balance of the difference between the amount of One Hundred Twenty Thousand One Hundred Twenty-Eight and 87/100 ($120,128.87) Dollars, and the One Hundred Thousand ($100,000.00) Dollars already paid, such difference being the sum of Twenty Thousand Twenty-Eight and 87/100 ($20,128.87) Dollars.

27. Plaintiffs are entitled to at least the sum of Seven Million Two Hundred Twenty-Five Thousand Seven Hundred Eight ($7,225,708.00) Dollars, less the Ten Thousand ($10,000.00) deductible.

## ADDITIONAL FACTS

28. CORAL repeats and realleges and incorporates by reference all the allegations herein as if more fully set forth herein.

29. Defendant owed CORAL a duty to act within all applicable standards of care in the underwriting of the subject policy.

30. Defendant owed CORAL a duty to act within all applicable standards of care in the servicing of the policy.

31. Defendant owed CORAL a duty to act within all applicable standards of care in communicating about coverage under the subject policy.

32. Defendant had and has a fiduciary obligation to act and take actions that were in CORAL's best interest.

33. Defendant breached its fiduciary obligations to CORAL.

34. Defendant engaged York Risk Services Group to act as its adjuster, including, _inter alia_, communicating with Plaintiffs, Plaintiffs' public adjuster; making and receiving materials and information demanded from Plaintiffs.

35. On February 17, 2013 Steven Harwood, P.E., of the firm SR Harwood Engineering, P.C., wrote a letter to the New York City Department of Buildings (hereinafter "DOB"), enclosing photographs a measurements, advising _inter alia_. that concrete had been placed against Plaintiffs' premises, that Plaintiffs' building had been damaged as a result, that the concrete placement imposed lateral forces against a wall of Plaintiffs' premises which were greater than the wall had been designed to resist, and that in the construction of 133 that Styrofoam was used, asserting that Styrofoam is "preloaded" and does not compress which could not therefore relieve the initial lateral pre stress. (A copy of said letter is annexed hereto as Exhibit "6").

36. Harwood recommended in his February 13th letter, in part, that:

    a)     "All Styrofoam between the buildings [129 Third and 133 Third] above the first floor is to be removed. This will relieve the wet concrete loading upon the wall system;"

    b)     "All concrete bearing against the 129 building needs to be removed;" and

    c)     "All concrete adjacent to the 129 Building's columns needs to be removed to within the 133 property line, to respect the code stipulated seismic separation, and to allow differential movement between the buildings.

37. Plaintiffs provided Defendant with its estimate of the costs to repair 129 along with other elements of its claim.

38. Plaintiffs provided Defendant with the estimate of Atlantic Estimating, LLC.

39. Plaintiffs' proposed methodology for effectuating the repairs included:

    a)     to alleviate the pressure from the adjacent building by demolishing part of the south facing structural shear wall of the adjacent structure;

    b)     to repair the building façade to a watertight condition by replacing the existing EIFS system with a standing seam copper panel system; and

    c)     to perform interior repairs to all floors.

40. Suit was commenced by Plaintiff Coral Crystal LLC against McArthur Morgan, LLC in 2012 in Supreme Court New York County by the filing of a Summons and Complaint to which Index No.: 158736/2012 was assigned.

41. Defendant commenced its own subrogation suit against McArthur Morgan, LLC, and others, in New York Supreme Court, bearing Index No.: 158239/2015, suing for a sum alleged to be in "excess of the jurisdictional limit of [the] court."

42. Defendant did not effectuate service upon McArthur Morgan until sometime in September, 2015.

43. In its Amended Complaint in its action against McArthur Morgan Defendant herein alleged (Plaintiffs' building in such action referred to as 201 East 14th Street, or alternatively as the 201 building):

9. On or about June 21,2012, construction was commenced at the property located at 133 Third Avenue, New York, New York (hereinafter "133 Property"), to include the erection of a new multi-story building.

10. During the course of the construction, lateral forces were created against the 201 Building causing severe damage to the building.

11. On December 5,2012, the northern wall of the 201 Building broke and/or crumbled.

44. On or about August 28, 2015 Defendant, through its counsel, indicated that it intended to negotiate with the owners of the premises 133 Third Avenue, McArthur Morgan, LLC. Defendant made the decision to negotiate directly with McArthur Morgan, LLC prior to having commenced its own subrogation suit against McArthur Morgan, LLC and others. (A copy of said letter is annexed hereto as Exhibit "3").

45. Defendant's actions and inactions, including negotiations with McArthur Morgan, were in derogation of its obligations and duties owed to Plaintiffs.

46. Defendant's actions and inactions, including its negotiations with McArthur Morgan, undercut Plaintiffs' positions and Plaintiffs' claims against McArthur Morgan. Said letter also contained the following:

> The repair proposal as submitted appears to incorrectly assume that the proposed stairway is required to conform to building code requirements. However, no building code or other requirements have been specified which would require such an elaborate or costly new, yet temporary structure. In our investigation of this issue, we have researched DOB requirements and determined that such an extensive temporary structure would not be required. Instead, a temporary light metal scaffolding type stairway with a roof and safety netting will ve sufficient to meet minimum building code requirements (assuming any exterior stairway will not be necessary).

> In this regard, we also draw your attention to the following provisions in policy form 10-02-1897 which provide coverage only for the minimum requirements of building codes affecting the demolition, construction or repair of buildings, and which states in pertinent part as follows:

> B. Application Of Coverage

> The coverage provided by this endorsement applies only if both **B.1** and **B.2** are satisfied and is then subject to the qualifications set forth in **B.3**.

> 1. The ordinance or law:

a. Regulates the demolition, construction or repair of buildings, or established zoning or land use requirements at the described premises; and

b. Is in force at the time of the loss.

But coverage under this endorsement applies only in response to minimum requirements of the ordinance of law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

47. The quoted statement, made by Defendant's representative, wrongly asserts that the NYC Building Code would only have the requirements stated.

48. The report of DBI Construction Consultants, LLC ("DBI") attached to counsel's August 28, 2015 letter indicates that DBI did a "preliminary study of the NYCDOB requirements" for a "light metal stair tower."

49. Another meeting was held at the loss site on September 3, 2015, at which time, _inter alia_, counsel for Plaintiffs and Defendant attended, as did their respective adjusters, as well as Defendant's building and engineering consultants.

50. By email, with attachments, dated October 14, 2015, Plaintiffs' Public Adjuster, Karl Denison, responded to the combined report prepared by DBI and Halliwell (Defendant's engineering consultant), enclosing attachments from Plaintiffs' building consultant, and responding to DBI's inquiries.

51. By email dated October 20, 2015, followed by letter of November 12, 2015, Defendant's adjuster, Cliff Hyde responded to Karl Denison's October 14, 2015. Included in such letter Hyde stated: "... if any temporary ingress/egress is required, it will only require a temporary stairway," and "that a temporary stairway with a light weight roof, enclosed with safety netting will be acceptable."

52. Hyde's representations, as set forth in the prior paragraph are inaccurate and not supported by the Administrative Code of the City of New York (NYC's Building Code).

53. Karl Denison replied to Hyde's October 20, 2015 letter by email dated October 23, 2015, advising, in part, that Hyde's letter was "not responsive to the insured's claim."

54. On November 11, 2015 Karl Denison wrote to Hyde again stating:

> You wrote on October 23rd " the meeting dates which
> you propose for next week will not be possible. Once
> we have prepared our response, which we anticipate
> will be within the next two weeks, we will forward
> same to you and we can then set up a meeting,
> including at the site if you request." Two weeks has
> passed and we've yet to receive a response or
> proposed meeting dates. When can you provide a date
> certain of a response and prosed dates to meet with
> us?

55. Hyde responded by letter dated November 12, 2015, which referred to Structural Engineering's Drawings "S-110.00-111.00," (plans prepared on behalf of 3rd Ave.) stating same were approved by the DOB.

11

56. Hyde's November 12, 2015 letter as well stated that [Defendant] was "continuing to explore if a satisfactory arrangement could be made with the owners of 133 3rd Ave. to allow a repair of the EIFS of the Coral building from the exterior of 129 3rd Ave.

57. Hyde's November 12, 2015 letter included as an attachment DBI's November 6, 2015 "Interim Claim Analysis Report."

58. DBI's November 6, 2015 "Interim Claim Analysis Report" reflects that DBI was told and accepted the representation by ownership of 133 3rd Ave. that its plans had "been approved, subject to inspection."

59. Another meeting was held among representatives of Plaintiffs, Defendant and the owners of 133 3rd Ave on December 3, 2015.

60. After the meeting of December 3, 2015, counsel for Defendant forwarded engineering drawings counsel had just received detailing proposed work to be performed at the 133 3rd Avenue property.

61. After the meeting of December 3, 2015, and on that date, Plaintiffs' adjuster forwarded to Defendant's representatives a probe report prepared by Montrose Surveying detailing some of the encroachment of concrete into Plaintiffs' building.

62. On December 4, 2015 Plaintiffs' adjuster emailed
Defendant's representatives and, in part, wrote:

> Yesterday you as well claimed that the plans
> that were provided from 133 Third Avenue's
> representatives were approved by the DOB.  You
> as well stated that you had been advised that
> the work set forth in the plans was going to
> begin shortly. The plans indicate that there
> will be no disturbance of the insured's
> building. As such you've consider them as fact
> and essentially having been completed as part
> of your repair scheme methodology , ignoring
> the insured claim. How can you support this
> knowing of the concrete encroachment on and
> into the insured building and again
> acknowledged during the meeting? In that **you
> and your consultants have been advised by the
> insured on multiple occasions that the initial
> plans you advised had been approved were not
> accurate, how do you reconcile that Chubb
> nevertheless has predicated its "settlement"
> position upon such plans and the
> representations made by 133 Third Avenue
> especially when you , and your own experts know
> that the plans are false in representation**?
> (Emphasis supplied).
>
> \* \* \*
>
> In response to our request for the names of any
> contractor yesterday who has reviewed your
> scheme and would perform the repairs Chubb
> outlined, while stating that there would be
> dozens, you as well stated that you were
> unaware of even one who had said they would
> perform the repairs for the figure you've
> proposed. Do you really expect the insured to
> base settlement on inaccurate plans?
>
> \* \* \*
>
> You stated that the DOB says a scaffolding/temporary
> type exterior staircase is sufficient for the insured's
> use . Would you please provide any and all documents,

13

emails, notes of any and all communications received by
anyone from the "Chubb team" from the NYC DOB wherein
the NYC DOB made any representations concerning a
"scaffold" or any such temporary staircase?

63. Defendant has never responded to the information

requested in the last paragraph.

64. Plaintiffs' adjuster wrote Defendant's representatives on

December 17, 2015 stating, in part:

> After much discussion surrounding the damages
> the insured has sustained we were pleased that
Chubb confirmed that there "has never been an issue with
coverage." It was as well heartening to have Chubb confirm that
concrete from the 133 Third Avenue construction site is either on
the EIFS, or that the concrete has penetrated through the EIFS
and through the foam board, and that it has pushed against and
through the insured's EIFS.

> > During each of the last two meetings, that is
> > yesterday's meeting and the meeting of December
> > 4th, Chubb promoted a plan that is still
> > theoretical, and relies heavily upon actions to
> > be taken by the adjacent property owner. Such
> > plan has well was promoted without specificity
> > as to the means and methods to be utilized,
> > without any critical construction path
> > schedule, and without the name of ANY
> > contractor that would be willing to perform the
> > promoted repair process.

> > As we mentioned yesterday we cannot understand,
> > and we cannot recommend that the insured agree
> > to a proposed repair process which is
> > predicated on something that may or may not
> > occur. While the New York City Department of
> > Buildings may someday approve the proposed
> > plan, it appears based upon the
> > misrepresentations made by those representing
> > 133 Third Avenue, and based upon the insured's
> > premises being used as a dormitory for N.Y.U.
> > that the plan likely will not be approved, and

14

if it were to be approved, that it would
quickly be shut down.   Yesterday again we
stated the insured has suffered damage, that
the claim submitted reflects a claim based on
current actual conditions, not based upon
theoretical conditions and scenarios that may
or may not occur, which, as noted rely upon
actions of the adjacent property owner. The
claim as submitted is in accordance with the
policy of insurance and should be honored.
There is no other estimate or plan that now
exists based upon the present condition of the
insured's building.

**We now understand that Chubb's evaluation of
the claim yields a loss measurement of
$735,028.00.**  All Chubb representatives
concurred that such loss measurement is on a
repair basis and not subject to depreciation.
**While neither we nor the insured agrees that
$735,028.00 reflects the full measure of the
insured's  loss,** given that Chubb confirmed
that there were no coverage issues, and that
the only issues that exist are how best to
repair the insured's property **we ask why Chubb
has not paid the undisputed loss measurement it
admits is owed.**  As was promised at the
meeting, Chubb was to be contacted with a
request for payment of the undisputed amount
owing.  **We recognize that Chubb has not stated
that the $735,028.00 is the undisputed amount.
Nevertheless, upon the facts set forth above it
would appear to be the only sensible
conclusion.**

(Emphasis supplied).

65. By email of January 4, 2016, Plaintiffs' adjuster wrote

to Defendant's counsel and adjuster including the following:

You have provided and evaluation of the claim
submitted which indicates an analysis of
$1,560,221 and a subsequent analysis of
$735,028. When we met on December 16th 2015
Cliff acknowledged the loss evaluation was not

15

> subject to depreciation. He did so when I asked
> what Chubb's Actual Cash Value calculation was
> of the insured loss. Unless there is another
> calculation Chubb has of the claim submitted
> Chubb should be issuing payment commensurate
> with the minimum undisputed amount of $735,028.
> Since Chubb and you as their representatives
have acknowledged the loss is covered that payment at a minimum
should be issued immediately without any further delay.

> On June 2nd 2015 we provided you via DropBox
> incurred expenses, supported by invoices in the
> amount of $439,635.89. Repeatedly you've stated
> you would review the invoices and get back to
> us about issuance of a second payment to the
> insured. Why has this not been done?
> Respectfully please explain why is Chubb
> withholding payments clearly due the insured?

66. Although Defendant was provided with Plaintiffs' claim
for incurred expenses of $439,635.89 on June 2, 2015, Defendant
refused to pay Plaintiffs for such incurred expenses.

67. By letter of January 7, 2016, counsel for Defendant
advised that the owners of 133 3rd Ave. had filed plans with the
NYCDOB on June 17, 2015 which had been approved.

68. Defendant, its adjuster, and counsel ignored the repeated
advice that the plans filed on behalf of the owners of 133 3rd
Ave. were inaccurate, and that the NYCDOB had subsequently issued
a SWO and rejected the plans.

69. Defendant's counsel's January 7, 2016 letter as well
threatened Plaintiffs. Such letter by counsel included:

> We expect the insured will have the opportunity

> to begin preparation for the actual north wall
> repair from the exterior with a contractor of
> its choosing. Should the insured refuse to
> avail itself of an opportunity to perform the
> repair from the exterior and mitigate the
> claimed repair costs, Chubb will take such fact
> into account as part of its ultimate evaluation
> of the insured's claim and the determination of
> any amount which may be owed.

70. Counsel's letter also stated Chubb disagreed that it was obligated to pay Plaintiffs for Plaintiffs' incurred expenses of $439,635.89.

71. Another meeting was held at the Plaintiffs' premises attended, _inter alia_, by representatives of Plaintiffs, Defendant and the representatives of the owners of 133 3rd Ave. on February 10, 2016.

72. Defendant, through York, sent Plaintiffs' adjuster a letter dated March 2, 2016 claiming that Plaintiffs' proposed methodology of effectuating repairs had not been demonstrated to be feasible.

73. Other than proffering the plans prepared on behalf of the owners of 133 3rd Ave., Defendant did not offer it's own plans as to how to repair or remediate the damages caused to Plaintiffs' premises.

74. Such March 2, 2016 letter as well indicated that Defendant would "not agree at [such] time to issue an actual cash value payment based" on Plaintiffs' submitted claim.

75. Plaintiffs' adjuster responded to such March 2, 2016 letter on March 4, 2016 stating, in part:

> On numerous occasions you and your consultants have stated "we don't know if there is concrete anywhere else except in the one unit" now the insured make's an offer to open up areas to determine one way or other if there concrete in and on the building and you now decline to meet with us.
>
> Your letter also neglects to reflect quite a bit of our discussion and your agreement that our positions were not unfounded. In fact it concerns me that there may not be much chance of resolution in this claim through adjustment if you are unwilling to state all of the facts when addressing our discussion, only focusing on those self-serving out of context statements.

76. Defendant predicated its opinion based, in part on, submissions to the NYCDOB filed on behalf of Mcarthur Morgan. Such plans were improper for they failed to show the encroachment into plaintiffs' building.

77. Defendant was repeatedly advised that such plans were inaccurate. Defendant was provided photographs (see Exhibit "7" attached), evidencing some of the encroachment which evidences that the plans filed by McArthur Morgan were inaccurate.

78. By letter dated April 13, 2016, Defendant's adjuster advised that Defendant had we have "arranged for a license agreement with the neighboring property owner, McArthur Morgan, for access to make the exterior repair [to Plaintiffs' premises]." (See Exhibit "5" annexed hereto).

79. The same April 13, 2016 letter included as well:

> We are advising you and the insured of this
> because it is necessary for the insured to have
> its contractor(s) prepared to proceed with the
> exterior repair of its north wall upon final
> execution of the access agreement with 133 3rd
> Ave. **The $425,000 access license fee will be
> paid for in full by Federal Insurance Company,**
> along with the cost of the necessary exterior
> repair work, net of the prior building repair
> advance.

(Emphasis added).

80. The April 13 letter as well included the following threat:

> Should the insured refuse to avail itself of
> this opportunity to perform the repair from the
> exterior, Federal Insurance Company will
> nevertheless take this repair opportunity into
> account as part of its evaluation and final
> adjustment of the insured's claim for exterior
> repair costs.

81. The permitted work to which Defendant's adjuster referred was revoked by the NYC DOB on or before April 13, 2016 (See Exhibit "8" annexed hereto).

82. Permitted work relating to 133 3rd Ave. under permit numbers 122563387-01-EW OT; 120643330-05-PL; 120643330-01-NB; and 120653330-01-EQ PN were all revoked by the NYCDOB on or before April 13, 2016. (See Exhibit "9" annexed hereto).

83. By letter dated April 14, 2016, Plaintiffs' adjuster transmitted Exhibit "9," evidencing the revocation of permits for work to be performed at the 133 3rd Ave. premises to Defendant's adjuster.

84. Plaintiffs' adjuster's April 14, 2016 letter included the following:

> "...you have presented drawings upon which you and your consultants have indicated your repair value is based off of, which you know to be inaccurate, and not reflective of the known field conditions."

85. Through the date of this Complaint, Defendant has failed to have provided any of its own plans as to how to repair Plaintiffs' premises.

86. Defendant has stated that the repairs to 129 should be made from the exterior of the 129 premises.

87. Defendant has relied upon drawings of Structural Engineering Technologies, PC filed on behalf of  with the DOB, to wit drawings "S-110.00" and "S-111.00" (hereinafter "133's drawings") to support its assertion that the repairs to 129 should be made from the exterior of the 129 premises.

88. Plaintiffs' representatives advised Defendant's representatives that 133's drawings are inaccurate.

89. Plaintiffs' representatives advised Defendant's representatives that 133's drawings, in error, allege that the assertion in such drawings that the "existing adjacent" building [129] would not be disturbed during the work covered by such drawings is impossible.

20

90. Plaintiffs' representatives advised Defendant's representatives that 133's drawings fail to provide for a Tenant Protection Plan for 129.

91. By letter dated March 25, 2015 to counsel for Defendant, the following request was made: "...please advise if Federal Insurance Company has any coverage issues, in order that we can properly respond." (A copy of said letter is annexed hereto as Exhibit "10").

92. By email dated October 20, 2015, and again on November 12, 2015 by letter, Defendant's adjuster, Clifford W. Hyde, Jr., noted that "the major points of variance [between the parties] appear to relate to the nature of any temporary ingress/egress required while the repair is being made." (A copy of said email and letter are annexed hereto as Exhibit "11").

93. In Hyde's November 12, 2015 letter, Hyde as well represented that a drawing prepared on behalf of the owners of 133 Third Avenue, New York, New York, being the: "November 19, 2013 two page drawing by Structural Engineering Technologies, PC; Drawing S-110.00-111.00, which bears a June 17, 2015 DOB approval stamp" was a "public record on file with DOB." (Hereinafter "the drawing").

94. Hyde stated in such letter, referring to "the drawing" referenced in the preceding paragraph, that: "[W]e are informed that the DOB has approved the work shown on it subject to an

inspection."

95. Defendant's counsel and Defendant's adjuster have been advised on at repeated occasions that "the drawing" that was filed contained inaccuracies.

96. Defendant has failed to pay the balance of Plaintiffs' claims to which Plaintiff is entitled to recover.

97. Defendant is obligated to pay Plaintiffs at least the sums of the estimated amount of $832,364.00 to Defendant for anticipated Loss of Income and Extra Expenses, as well as the sum of Seven Million Two Hundred Twenty-Five Thousand Seven Hundred Eight ($7,225,708.00) Dollars, less a Ten Thousand ($10,000.00) deductible for damages to Plaintiffs' premises.

## AS AND FOR A SECOND CAUSE OF ACTION

98. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the previous paragraphs, as if more fully and completely set forth at length herein.

99. Defendant, by and through its agents and employees, had a duty to fairly, timely and accurately adjust Plaintiffs' claims.

100. Defendant failed to fairly, timely and accurately adjust Plaintiffs' claims following the loss.

101. Defendant ratified the actions of its agents and employees by failing to pay Plaintiffs' losses pursuant to the Subject Policy.

102. Plaintiffs anticipate incurring additional consequential losses, _inter alia_, related to litigation costs, attorney's fees, architect fees and engineering fees related to this claim.

103. Defendant has breached the covenant of good faith and fair dealing that is implicit in the contract of insurance between Plaintiffs and Defendant, by not investigating and responding to Plaintiffs' claims in good faith, and by deceptively misrepresenting facts related to Plaintiffs' claims for this loss.

104. Defendant has breached the covenant of good faith and fair dealing that is implicit in the contract of insurance between Plaintiffs and Defendant, by not paying for the claim in a timely manner.

105. Defendant has breached the covenant of good faith and fair dealing that is implicit in the contract of insurance between Plaintiffs and Defendant by its failure to pay Plaintiffs' claims in their entirety.

106. The breach of contract and bad faith conduct of Defendant is a proximate cause of the consequential damages to the Plaintiffs.

107. The parties to this policy necessarily knew and should

have known that a breach of the covenant of good faith and fair dealing by Defendant would necessarily cause Plaintiffs to incur further losses including, but not limited to the aforementioned costs, fees and litigation expenses as a consequence of Defendant's breach.

108. As a result of the foregoing, Plaintiffs have sustained damages, including consequential damages, in the amount of at least the sums of the estimated amount of $832,364.00 to Defendant for anticipated Loss of Income and Extra Expenses, as well as the sum of Seven Million Two Hundred Twenty-Five Thousand Seven Hundred Eight ($7,225,708.00) Dollars, less a Ten Thousand ($10,000.00) deductible for damages to Plaintiffs' premises.

## AS AND FOR A THIRD CAUSE OF ACTION

109. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the previous paragraphs, as if more fully and completely set forth at length herein.

110. Defendant has engaged in misleading and deceptive conduct by failing to adequately investigate and assess Plaintiffs' claims, failing to pay Plaintiffs' claims, and requiring Plaintiffs to retain counsel and commence litigation in order to obtain policy benefits.

111. Defendant has engaged in misleading and deceptive

24

conduct by constructively denying the balance of Plaintiffs' claim without basis.

112. As a result of Defendant's misleading and deceptive conduct, Plaintiffs have had to institute this action in order to obtain payment for their claims.

113. The misleading and deceptive actions of Defendant and its agents and employees toward Plaintiffs, in failing to promptly and properly investigate, assess, pay, adjust, appraise and/or otherwise pay and recompense Plaintiffs for their losses pursuant to the policy constitute deceptive business acts and practices, as proscribed by Section 349 of the General Business Law of the State of New York.

114. Defendant's coverage form in the policy is a standard form issued to many similarly situated insureds in New York State and Defendant's conduct is of a nature that is likely to be repeated in the future.

115. As a result of the actions complained of, Plaintiffs are entitled to treble damages up to One Thousand Dollars ($1,000.00), plus reasonable attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

116. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs, with the same force and effect as if more fully and completely set forth at

25

length herein.

117. Plaintiffs contend that Defendant failed to promptly and properly investigate, assess, pay, adjust, appraise and/or otherwise pay and recompense Plaintiffs for their losses pursuant to the policy.

118. Defendant has thus far not reimbursed Plaintiffs for all losses incurred.

119. As a result, there is an actual controversy among the parties on the issue of how much Plaintiffs may recover under the policy for their losses.

120. Plaintiffs assert this cause of action for Declaratory Judgment as there must be a prompt and expedited judicial determination as to what compensation is owed by Defendant for Plaintiffs' losses.

121. Unless the rights of the Plaintiffs and the liabilities of the Defendant are promptly adjudicated, jointly, in one forum, severe injury will result to the Plaintiffs.

122. As a result of the foregoing, this Court should declare that the Defendant in this case is responsible and liable to Plaintiffs for its failure to promptly and properly assess and pay Plaintiffs' losses.

### AS AND FOR A FIFTH CAUSE OF ACTION

123. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs, with the same force and effect as if more fully and completely set forth

at length herein.

124. Plaintiffs have petitioned this Court to compel Defendant to participate in appraisal.

125. Should the appraisal proceed, Plaintiffs demands that the Court compel Defendant to pay to Plaintiffs the amounts awarded in such appraisal.

**WHEREFORE**, Plaintiffs respectfully demand judgment as follows:

(a) On the First Cause of Action against Defendant in at least the sums of the estimated amount of $832,364.00 to Defendant for anticipated Loss of Income and Extra Expenses, as well as the sum of Seven Million Two Hundred Twenty-Five Thousand Seven Hundred Eight ($7,225,708.00) Dollars, less a Ten Thousand ($10,000.00) deductible for damages to Plaintiffs' premises;

(b) On the Second Cause of Action against Defendant in at least the sums of the estimated amount of $832,364.00 to Defendant for anticipated Loss of Income and Extra Expenses, as well as the sum of Seven Million Two Hundred Twenty-Five Thousand Seven Hundred Eight ($7,225,708.00) Dollars, less a Ten Thousand ($10,000.00) deductible for damages to Plaintiffs' premises;

(c) On the Third Cause of Action against Defendant in the amount of One Thousand Dollars ($1,000.00), plus reasonable attorneys' fees; and

(d) On the Fourth Cause of Action declaring that Defendant in this case is responsible and liable to Plaintiffs for its failure to promptly and properly investigate, assess, pay, adjust, appraise and/or otherwise pay and recompense Plaintiffs for their losses, plus consequential damages including attorneys' fees, litigation costs and expenses, in an amount to be determined by the Court, together with interest thereon from October 29, 2012, and the costs and disbursements of this action; and

(e) On the Fifth Cause of Action, declaring that Defendant is liable to pay Plaintiffs for the sums awarded in appraisal, should appraisal proceed;

Altogether with interest, punitive damages, attorneys' fees, cost and disbursements of this action.

Dated:   New York, New York
        January 4, 2017

Yours, etc.,

WILKOFSKY, FRIEDMAN,
  KAREL & CUMMINS

By: _____

DAVID B. KAREL
Attorneys for CORAL REALTY,
LLC, CORAL CRYSTAL, LLC
299 Broadway - Suite 1700
New York, New York 10007
(212) 285-0510

20151/15J125.L12
DK:dp

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

    I, CRIS ALCAMO, being duly sworn, says:

    I am the Chief Financial Officer of the Plaintiff corporations in the within action; I have read the Verified Complaint and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

CORAL REALTY, LLC, and CORAL
CRYSTAL, LLC et al.

By: _____
CRIS ALCAMO, CFO

Sworn to before me this
10th day of January, 2017

_____
NOTARY PUBLIC

**LEAH RIMAN**
**Notary Public, State of New York**
No. 01RI6061956
Qualified in Kings County
Commission Expires July 23, 2017