UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CORAL REALTY, LLC, and CORAL　　　　　　　　Docket No.: 1:17-cv-01007
CRYSTAL, LLC,

                        Plaintiffs,

      -against-

FEDERAL INSURANCE COMPANY,

                        Defendant.
------------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO FEDERAL'S MOTION TO
<u>VACATE THE APPRAISAL AWARD IN WHOLE OR IN PART</u>**

# TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| PRELIMINARY STATEMENT.......................................................................... | 1 |
| ARGUMENT...................................................................................................... | 3 |
| CONCLUSION...... ........................................................................................... | 16 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                             **Page(s)**

936 Second Avenue, L.P. v. Second Corporate Development, Co., Inc.,
(2011) 82 A.D.3d 446.................................................................................... 4

Benjamin Shapiro Realty Co. v Agricultural Ins. Co.,
287 AD2d 389, 389-390 (1st Dept 2001)................................................. 12

Casper v. Allstate Ins. Co.,
Unrecorded decision, Md. Ct. of Special Appeals #1583, June 28, 2000................. 9

Clark v. Kraftco Corp.
323 F.Supp. 358, 360 (S.D.N.Y. 1971)..................................................... 3, 4

Clinard v. Allstate Floridian Ind. Co. And Allstate Floridian Ins. Co.,
2008 WL 879316 (M.D. Fla. 2008)........................................................... 6

Cohen v. Atlas Assurance Co.,
163 App. Div. 381, 148 N.Y.S. 563 (1st Dept. 1914)............................................. 5

D.K. Properties v. National Union Fire Ins. Co.,
(1st Dept. 2019, decided January 17, 2019)................................................. 12

Farmers Auto. Ins. Ass'n v. Union Pacific Ry. Co.,
319 Wis.2d 52 (S. Ct. Wis. 2009)............................................................ 11

Gansevoort Holding Corp. .v. Palatine Ins. Co.,
170 N.Y.2d 171 (S. Ct. N.Y. Cty. 1957), aff'd 11 Misc. 2d 518 (1st Dept. 1958)..... 8, 14

Hemingway v. State Farm Fire and Casualty Company,
187 A.D.2d 814 (3rd Dept. 1992).............................................................. 4

John P. Burke Apartments, Inc. v. Swan,
528 N.Y.S.2d 718 (App. Div. 3d Dept. 1988).........................................................7

Lundstrom v. United Services Auto. Ass'n-CIC,
192 S.W.3d 78 (Tex. App.-Houston 2006)................................................. 5

Matter of Delmar Box Co. (Aetna),
309 N.Y. 60, 127 N.E.2d 808................................................................ 4, 10, 11

Mazzocki v. State Farm Fire & Cas. Corp.,
1 A.D.3d 9, 12 (3rd Dept. 2003)................................................................................ 16

Moore v. Eadie,
245 N.Y. 166, 156 N.E. 653................................................................................ 4, 10

Omaha Water Company v. City of Omaha,
162 F. 225................................................................................................................ 4

Perkins v. Giles,
50 N.Y. 228 (1872).................................................................................................. 11

Rice v. Ritz Associates, Inc.,
88 A.D.2d 513 (1st Dept.1982) aff'd by 58 N.Y.2d 923 (1983)................................... 4

SR Intern. Business Ins. Co. Ltd. v. World Trade Center Properties, LLC,
445 F.Supp.2d 320 (S.D.N.Y. 2006).......................................................................... 16

St. Paul Fire Marine Ins. Co. v. The Tire Clearing House,
58 F.2d 610 (8th Cir. 1932)........................................................................................ 3

Strome v London Assur. Corp.,
20 A.D. 571 at 573(2nd Dept. 1897)........................................................................... 6

Zarour v. Pacific Indemnity Company,
 (S.D.N.Y. 2017) 2017 WL 946332 ..................................................................... 3, 5, 8

# PRELIMINARY STATEMENT

Appraisals are intended to be binding. They are not intended to be waypoints in resolution of insurance claims. Defendant has gone out of its way to delay the resolution of Plaintiff's claim. Plaintiff's building suffered covered damages to its property greater than six years ago.

Should this court grant Defendant's application, Michael Young, the panel's umpire, and each witness, party participant in the appraisal process will necessarily need to be examined while Defendant goes on a fishing expedition. The appraisal will prove to be but one of many hurdles the insured must navigate through and endure before it can be paid upon its claim for which it paid premiums so many years ago.

Plaintiff made demand upon Defendant to appraise the loss in 2016 and nominated Charles Murray as its appraiser. Defendant's originally proposed as its appraiser Mark Parisi. Mr. Parisi is and was a partner in the law firm of White & Williams, a firm regularly provides services to Defendant.

Mr. Parisi was declared by the New York State Supreme Court to be ineligible to serve as independent appraiser, the court therein noting that "he shares profits of his law firm and that [Defendant] is a significant client of the law firm." (Exhibit "2" annexed hereto) Defendant then appointed Wayne Martin.

Wayne Martin, arrived at the first appraisal session solely with an umbrella. Murray Decl. ¶8, Wilson Decl. ¶20 . Martin had not prepared anything to share with the panel, professed not to have read any part of the binder submission assembled by Mr. Murray, and claimed not to have received anything from Defendant Federal. Id.

Defendant claims, Rudoshko's Declaration ¶ 26, and Preliminary Statement ¶2, that: "After the appraisal began, Coral's counsel demanded that Federal refrain from communicating with Federal's appraiser."

Karel Decl. ¶¶ 3 and 4 evidences that Mr. Karel's recollection is that the only demand was that Defendant not direct and control its appraiser. Along with such demand was the acknowledgment that the law does not require that clients refrain from communicating with their appraisers. Such demand was made because, per Charles Murray, when Martin appeared, unprepared, for the first appraisal meeting Martin asserted that he could not discuss any figures with the panel because he, Martin, had not been provided with authority to do so from Defendant; Martin advised as well that he had but one hour to attend the session! Murray Decl. ¶20, Wilson Decl. ¶8.

Counsel suggests that because an executive of Plaintiff, with direct knowledge of the events, participated in the appraisal that same constituted prejudicial misconduct mandating vacatur of the appraisal award. Counsel seems to suggest that Federal and its counsel did not communicate throughout the appraisal. Such is not the case!

In the State Court action Defendant provided portions of its files, as well as some of its communications. Karel Decl. ¶7. Included in the documents provided are numerous communications evidencing communications among Defendant's appraiser, Defendant's various counsel, John Nocera, Charles Rocco and Brian Lustbader, <u>inter</u> <u>alia</u>, and Defendant. See Exhibit "3" annexed hereto. FS 9072 , FS 8243, FS 8220, FS 8220, FS 7941, FS 7936, FS 7903-7905, FS 7892-7895, FS 7875, and FS 7786.

As addressed more fully below there is no obligation for the appraisal panel to explain its award, or to articulate why one or both sides' arguments or evidence was considered or not. After Wayne Martin was appointed appraiser the appraisers agreed upon Michael Young to serve as umpire. The panel met numerous times, including at JAMS offices in New York and Philadelphia, and at the premises. The panel hired a neutral engineer, James Feuerborn from Thornton-Tomasetti, received information, plans, and presentations from witnesses, including David Podolsky from Coral Realty, Plaintiff's and Defendant's engineers, Plaintiffs and Defendant's contractors, an attorney for Defendant, an architect of Defendant and others. Murray Decl. ¶ 11.

Defendant has raised numerous issues, asserting propositions and surmise, presumably in an effort to bait Plaintiff in responding to each allegation thereby attempting to raise issues of fact. Defendant has failed to offer any facts sufficient to vacate or otherwise modify the award, let alone satisfy the burden of clear and convincing proof.

**ARGUMENT**

**Standard of Review**

The standard to be utilized in vacating appraisal awards, as set forth in Zarour v. Pacific Indemnity Company, (S.D. N.Y. 2017) 2017 WL 946332, is a high standard requiring proof of "fraud, bias, or bad faith." Clark v. Kraftco Corp. 323 F.Supp. 358, 360 (S.D.N.Y. 1971) enunciated that the proof to establish a ground for upsetting an appraisal award must be demonstrated by "clear and convincing evidence." In accord, see St. Paul Fire Marine Ins. Co. v. The Tire Clearing House, 58 F.2d 610 (8th Cir. 1932).

In the New York case of Hemingway v. State Farm Fire and Casualty Company, 187 A.D.2d 814 (3rd Dept. 1992) the court asserted that there is a presumptive validity in an appraisal award and such is not to be set aside by ascribing sinister motives. Id. at 815.

Rice v. Ritz Associates, Inc., 88 A.D.2d 513 (1st Dept.1982) aff'd by 58 N.Y.2d 923 (1983) for the reasons set forth at the Appellate Division. The appellate division reversed the trial court and upheld the appraisal which Plaintiff sought to set aside. The court set forth the standard to be utilized when attempting to set aside an appraisal such as that before this Court. The Appellate Division in Rice stated:

> All that we may be concerned with is whether the appraisers acted honestly and in good faith, in the exercise of their wide discretion as to methods of procedure and sources of information. See Omaha Water Company v. City of Omaha, 162 F. 225. There was no showing otherwise. In addition, plaintiff claimed that the value found by the appraisers was tied to a date not within the time frame stated in the pertinent paragraph of the lease; this is just not so, and, interestingly enough, that date was agreed upon by all three appraisers. The fact that the two of the appraisers who agreed conferred out of the presence of the third is of no significance in an appraisal, as distinguished from an arbitration. See Matter of Delmar Box Co. (Aetna), 309 N.Y. 60, 127 N.E.2d 808. The appraisal, made pursuant to a contract that the agreement of two of the panel constituted a binding and conclusive decision, should not be set aside except for fraud, bias or bad faith. Moore v. Eadie, 245 N.Y. 166, 156 N.E. 653.

Citing Rice, the First Department restated the standard to be utilized when considering setting aside and appraisal award in the case of 936 Second Avenue, L.P. v. Second Corporate Development, Co., Inc., (2011) 82 A.D.3d 446:

> The motion court properly determined that there was no evidence of fraud, bias or bad faith in the appraisal process. Nor was the award irrational. Absent such evidence, "the appraisal should stand."

Defendant cited Clark v. Kraftco Corp. 323 F.Supp. 358, 360 (S.D.N.Y. 1971) as setting forth the standard to be utilized in setting aside appraisals. Clark set forth the standard as:

4

What little precedent there is for guidance, however, suggests, as the company urges, that review of appraisals is governed by different and broader standards. Cohen v. Atlas Assurance Co., 163 App. Div. 381, 148 N.Y.S. 563 (1st Dept. 1914), enumerated those factors which, if shown by clear and convincing evidence, would vitiate an appraisal:
* * * any inference of finding that the appraisal was not honestly made in good faith, and, under the circumstances, with sufficient thoroughness, and by following the ordinary and only tests that could be applied. at 566.

We are in agreement with part of defense counsel's argument, citing Zarour v. Pacific Indemnity Company, (S.D. N.Y. 2017) 2017 WL 946332, that the grounds for vacating or modifying an appraisal award are different than the grounds for vacating or modifying an arbitration. Zarour addressed the appraisal panels' agreed failure to have addressed all items of damage, having decided solely upon the wind damage claim.

Defendant failed to include the relevant language from the decision. Zarour stated that to the extent that the appraisal panel considered claims it was entitled to address "the determination may only be challenged on a showing of "fraud, bias or bad faith." Id.

It is Defendant's burden to prove by such clear and convincing evidence that the award should be set aside. Lundstrom v. United Services Auto. Ass'n-CIC, 192 S.W.3d 78 (Tex. App.-Houston 2006). Defendant herein has offered virtually no evidence to support its allegations; we are not suggesting that the court accept Defendant's claims, but state that were the court to do so it would find that there are mere allegations, no proof, and nothing that could ever rise to the level of "clear and convincing."

Should this Court seek to vary the standard of review, open this matter for discovery despite the lack of a proper proffer of anything justifying setting aside the award, such would open the floodgates of having appraisal opened, and taking examinations before trial of umpires.

In the case at bar there was no failure to have addressed items of damage. Further although Defendant insinuates that the panel did not consider evidence it offered, Defendant failed to offer any proof that there was any evidence it wished to offer at the appraisal that was not accepted; Defendant did not even specify any item or fact that was refused to be considered.

Defendant's offer in such regard was that Wayne Martin requested information, in addition to that which was offered. In such regard Defendant cited JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF AN INSURANCE APPRAISAL, 479 (3d ed. 2015) and the case of Strome v London Assur. Corp., 20 A.D. 571 at 573(2nd Dept. 1897). In Strome the court stated:

> We think the evidence may be regarded as establishing an utter refusal and neglect on the part of the umpire properly to perform his duties, and that his neglect and refusal amounted to misconduct in a legal sense, and require the court to withhold its sanction from an award made under such circumstances.

Such is not the situation before the court. Herein, despite Murray's protestations to the contrary, and contrary to the evidence, Murray and the panel were presented with plans and materials substantiating Plaintiff's claim. Murray Decl. ¶ and Harwood Decl.¶ 6 and Exhibit 6. Again, it is not the Defendant has offered **any** offer that it was denied the opportunity to present any evidence, document or otherwise. Rather, Defendant says it requested plans that did not then exist, and Defendant is essentially arguing that without being provided the plans that did not then exist that the panel could not properly have rendered an award.

Disagreements over necessary repairs and methods of repair do not constitute disputes over coverage. Clinard v. Allstate Floridian Ind. Co. and Allstate Floridian Ins. Co., 2008 WL 879316 (M.D. Fla. 2008),[addressing particularly whether permit fees were required to be paid].

Herein, Defendant admitted coverage for the claims of Plaintiff. Karel Decl. ¶ 7. Accordingly appraisal was appropriate.

6

It is appreciated that counsel for Defendant has cited to the book written by Jonathan Wilkofsky. Counsel has cited on page 13 to a known error in the book and the accompanying citation. The cite to the case of <u>John P. Burke Apartments, Inc. v. Swan</u>, 528 N.Y.S.2d 718 (App. Div. 3d Dept. 1988) is an error. The case has nothing to do with insurance appraisals. The matter involved the petitioner's attempt to reduce a tax assessment. The court was considering if it could accept an appraisal report offered by an intervening school district.

That Defendant cited such case stating that the "appraisal was properly rejected for the umpire's failure . . ." Defendant clearly has not read the case, and nevertheless created a fiction that such case involved an umpire.

The reference to supporting calculations is unrelated to anything at all related to insurance, claims or the like. The intervenor's expert failed to explain at all why its estimated appraisal of property for tax purposes differed from the assessments. Such case is being removed from the book; the case is inapposite.

Similarly, Defendant has created strawmen in order to knock them down. Apparently Defendant is trying to raise issues of fact, hoping that Plaintiff will accept the challenge and thereby create issues for the court to believe need to be addressed. Insurance companies are treating appraisals as but one more step along the way, one more barrier for insureds to navigate around before insureds can collect on the contract they entered. Insureds pay their premiums up front and then spend years trying to obtain the benefit of the bargain; the benefit of which they hoped they would not need to claim.

The third time counsel cited to Jonathan Wilkofsky's book on Appraisal is at its brief on page 15. Counsel cites to the book arguing that the appraisal was required to be conducted in accordance with the policy. Counsel proceeds to create false failures of compliance.

Despite counsel's argument, there is no law requiring the appraisers to create schedules and estimates. To the extent Defendant wished to offer its estimate of costs to perform the exterior-in method it could have. There is not one dollar of claims included in the award attributable to anything other than items directly stemming from the December 2012 loss.

Defendant thereafter cited <u>Zarour</u> again (brief page 12) for the proposition that awards should be vacated "to the extent that an appraisal decides issues beyond one of these statutorily-prescribed areas." Defendant's counsel then cites what counsel perceives to have been failures of the panel to explain adjustments and other alleged failures. None of what counsel cited even remotely addressed issues that exceeded those "statutorily-prescribed."

Defendant cited <u>Gansevoort Holding Corp. .v. Palatine Ins. Co.</u>, 170 N.Y.2d 171 (S. Ct. N.Y. Cty. 1957), aff'd 11 Misc. 2d 518 (1st Dept. 1958). Such court described the standard to be applied as: "[The] award should not be denied effect in the absence of clear and strong proof amounting to fraud, bad faith or misconduct.

No Proof of Prejudicial Misconduct was Offered

Not only was no offer made of prejudicial misconduct, none existed. That David Podolsky appeared before the tribunal is of no moment. Mr. Podolsky had knowledge of the claim and conditions in the building . That he as well advised the panel of water intrusion into the building's first floor does not constitute prejudicial misconduct. Such merely evidenced that Plaintiff's claim had legitimacy. Podolsky Decl. ¶ 18 . Defendant had been advised that the intrusion made by the adjoining property owner, the basis for the claim, resulted in the building being exposed and subject to water intrusion. That the condition manifested itself was appropriately brought to the panel's attention. Podolsky Decl. ¶ 18. Murray Decl. ¶¶ 53 and 54.

Defendant's reference to Michael Young's statement that such affected his determination of damages does not evidence that misconduct occurred. Proof that damages to part of the building existed, caused by the event giving rise to the claim, will and should necessarily be considered. There is no evidence that any damages caused by such latter leak were added to the claim or included in the award.

It is offensive that Defendant would accuse Michael Young of misconduct. The courts have faced these situations before. In such situations the court presumes the good faith conduct of the umpire, placing the burden of proving otherwise on the party seeking to overturn the award. <u>Casper v. Allstate Ins. Co.</u>, Unrecorded decision, Md. Ct. of Special Appeals #1583, June 28, 2000.

Defendant alleges that "Federal's appraiser was repeatedly denied the opportunity to be heard," (page 9) and asserted: "As instances of this type of misconduct are too numerous to list here, Federal provides the following examples."

Defendant alleged "First" David Podolsky's plea, and that "Federal had no opportunity to explain that its Exterior Method would be safest . . ." As noted, that Coral's executive participated in appraisal is not misconduct. Individuals with knowledge did present to the panel. Indeed, Defendant's appraiser consented. Murray Decl ¶ 27 .

Continuing on page 10-11, counsel then lists three alleged instances of the panel's "failure to consider evidence provided by Federal's appraiser:

First:     The allegation that its appraiser was denied access to crucial documents. (Such would not be a failure to consider evidence), and in any event Defendant did not assert one item of information offered to which its appraiser was denied access;

Second:     The allegation that the panel failed to consider scaffolding costs provided by Federal's appraiser. There is **no** evidence to support such bald allegation; Federal solely asserts that **"The umpire never explained his reasoning."** (Emphasis in the original); and

9

Third: The allegation that the panel "disregarded Federal's appraiser" as to factors to be considered in determining ACV. Federal chose not to proffer any evidence even alleging which factors were offered and then "disregarded."

Defendant's claims of misconduct were said to be in three areas. The first was just discussed. That the evidence was not given the weight Defendant wished is not misconduct by the panel.

Defendant then alleges in "Second" that Coral's injection of a new claim resulted in Young increasing award. There is no evidence to support such claim. The fact that the panel was told of water intrusion, that had been predicted based upon the loss, and that the water intrusion existed, were facts pertinent to the appraisal. There is no evidence that any sums were claimed for the water intrusion, or that the panel included any money occasioned by such water intrusion. Both David Podolsky and Charles Murray confirm that no amounts of the award included any figures for any damages to Coral's building other than amounts occasioned by the December 2012 loss.

Third, Defendant claims that David Podolsky urged the umpire to have Federal attempt to settle. In fact, the plea was solely to have the appraisal move forward to a resolution. See Podolsky Decl. ¶ 14.

To the extent Defendant suggests that it was improper for Michael Young to have break-out sessions, and to proceed as the panel saw fit does not violate any rule or obligation of the panel. Courts will generally uphold the appraisal as long as the appraisers proceeded in good faith, without bias or fraud. An appraisal is not conducted in the same manner as a judicial hearing, but may be made in any manner which is fair and equitable. (Moore v. Eadie, 245 N.Y. 166, 56 N.E. 653 [1927]). Additionally, the mere fact that two appraisers confer outside the presence of the third will not invalidate the appraisal (Matter of Delmar Box Co., 309 N.Y. 60, 127 N.E.2d 808 [1955] ). Id. at 876.

Appraisers are not obligated to give the parties any formal notice to hear evidence. Appraisers can proceed even by ex parte investigation, as long as the parties have an opportunity to present their arguments to the appraisers regarding the matters in issue (In re Delmar Box Co., supra). Id. at 877.

**Alleged Errors**

Only errors that appear on the face of the award may be modified by a court reviewing such award. Farmers Auto. Ins. Ass'n v. Union Pacific Ry. Co., 319 Wis.2d 52 (S. Ct. Wis. 2009).In that the A.C.N.Y. estimate of Ken Wilson was not made part of the award (Murray Decl. ¶ 2), same should not be considered as appearing in the award.

Footnote 17 in Farmers explains the rationale for giving deference to appraisal awards. The court explained that the parties contracted for the appraisal process. "Thus, a deferential review is in accord with the parties' bargained-for agreement." Id.

Such footnote includes:

> The purpose of alternative dispute resolution methods such as binding appraisal is to help litigants resolve their disputes relatively quickly and inexpensively. The dissent's approach would defeat this purpose by expanding and protracting expensive and stressful litigation—the exact opposite purpose such clauses were intended to have.

The New York Court of Appeals has stated that such an award may be set aside for a "palpable mistake of fact in th nature of a clerical error such as a miscalculation of figures." The court continued that [T]he merit of an award, however unjust or unreasonable it may be, cannot be reinvestigated, for otherwise the award, instead of being the end of litigation would simply be a useless step I its progress." Perkins v. Giles, 50 N.Y. 228 (1872).

11

That the panel considered life and safety concerns does not make such concerns an "ordinance or law" claim. The temporary staircase is neither a damaged or undamaged portion of the building. See policy, Exhibit 1 to Defendant's motion at D. Coverage page 7 of 12.

In the case of <u>Benjamin Shapiro Realty Co. v Agricultural Ins. Co.</u>, 287 AD2d 389, 389-390 (1st Dept 2001), cited for authority in the recent case of <u>D.K. Properties v. National Union Fire Ins. Co.</u>, (1st Dept. 2019, decided January 17, 2019) (copy annexed hereto as Exhibit "7"), the court stated:

> In light of the insured's contractual duty to "take all reasonable steps to protect the covered property from further damage by a covered cause of loss," the insured is entitled to reimbursement for the costs of demolishing and repairing that were incurred with respect to the remainder of the concrete slab.

The panel appropriately included expenses incurred by Plaintiff in protecting its property, including fees of A&B Engineering Land Surveying, P.C.'s fees for attending in court were properly included for such expenses were incurred to protect the property from further damage (concededly covered by the policy, see pages 68 and 79 of 201). See Murray Decl. ¶ 58. A&B was represented to have appeared in court on an Order to Show Cause to stop the construction from causing further damages. See as well Rollins schedule 5 attached to the award evidencing the fees for such appearance in the sum of $1,600. <u>Id.</u>

Steven Harwood's invoices were as well found by the panel to be appropriately included and loss related. In this regard it should be noted that (a) his invoices were discounted by the panel by approximately 15%; and (b) that the policy provides coverage for the costs incurred to prepare claims (see policy at page 155 of 201). <u>Id.</u>

The numbers included in the appraisal award are at variance with the figures in the claim and in Ken Wilson (A.C.N.Y.) estimate. The numbers vary because after discussion and analysis two out of three of the appraisal panel members came to an agreement that the figures agreed were fair and appropriate considering the information presented at the appraisal.

Michael Young explained his rationale for his thoughts in reducing numerous portions of Plaintiff's claim. (See Exhibit "6" to Defendant's motion). When, as here, Charles Murray agreed with such figures such amounts were included in the appraisal. Murray Decl. ¶ 35.

The extra expenses incurred as set forth as errors in Defendant's motion, number 8, were found by the panel to be properly claimed as incurred, directly related to the loss and within the scope of expenses Plaintiff necessarily incurred as a result of the loss. Such are detailed on Schedule 5 of Rollins Accounting included as part of the Appraisal award. Again, without fraud, bad faith or misconduct, second-guessing as to whether the panel was right or wrong with its judgment about the amount of such figures is inappropriate.

There was no agreement that the award specify the damages suffered under two separate methods (inside-out and outside-in). The decision of Justice of New York Supreme Court set forth how the appraisal was to be conducted. There was no other agreement.

By Order, dated February 6, 2017, the New York Supreme Court granted Plaintiffs' motion and declared Mr. Parisi ineligible to serve as independent appraiser. The order directed Respondent to appoint a replacement "**in the same manner and procedure as if it was the initial appointment. The two independent appraisers shall thereafter follow the procedure as set forth in the insurance contract and statute.**" (A copy of the Order is annexed hereto as Exhibit "2" (emphasis added)).

Defendant cites solely to a NYC Court case to support its claim that the award should be set aside for failure to set forth the value of the property. Such is not controlling. Substantial compliance was sufficient. Gansevoort, supra.

Nevertheless Defendant cited Gansevoort for the proposition that appraisal awards that fail to comply with the terms of the submission are not entitled to a presumption of validity. Defendant

13

failed to state what the terms of the submission were for the court to determine if the parties complied with same or not. The court in Gansevoort actually said:

> An appraisal proceeding, such as this, which indicates a sustained effort at considerable expense to determine scientifically the extent of damage, is entitled to every reasonable intendment and presumption of validity, provided the appraisers and umpire have substantially complied with the terms of the submission. Their award should not be denied effect in the absence of clear and strong proof amounting to fraud, bad faith or misconduct.

Herein, as in Gansevoort, the appraisal was conducted with a sustained effort at considerable expense. There is not a scintilla of evidence of fraud, bad faith or misconduct.

### Actual Cash Value

The Gansevoort court continued stating that the failure to have included the actual cash value of the property did **not** require the award be set aside, where as here, the amount of the damages were but a fraction of the building's value, stating that substantial compliance was sufficient. Id. at 522

Defendant would have this court toss the appraisal based upon its counsel's suggestion that the appraiser's failure to have included additional items to be considered in reaching actual cash value precluded the appraisers from making a decision about the actual cash value.

Such argument is in derogation of the award which specifically addressed actual cash value (ACV), stating that such was the same as the cost to repair in that there was no betterment. Further, Charles Murray's declaration indicates that the panel did consider s well: "that after the repairs the building would have no betterment. As well the panel considered that the building was being utilized as a dormitory for hundreds of NYU students, that the premises were fully occupied, we considered the age and condition of the building. To argue that we were unaware of such factors and did not consider them is inaccurate. " Murray Decl ¶ 79-80.

Defendant challenges the determination of ACV, while it does not proffer any evidence that it objected or raised such issue during the appraisal. The panel was entitled to, and indeed obligated to reach a decision on the ACV value based upon the materials and evidence presented to the panel.

Defendant's counsel repeatedly cites "misconduct" in the appraisal process, as if saying it repeatedly would make it true. Counsel (brief page 9) created a brief heading: "Violation of Federal's Procedural Rights." Counsel then claims that "the panel's failure to consider evidence provided by Federal's appraiser materially prejudiced Federal's rights. . . As instances of this type of misconduct are too numerous to list here, Federal provides the following examples."

Continuing on page 10, counsel then lists three alleged instances of the panel's "failure to consider evidence provided by Federal's appraiser:

First: The allegation that its appraiser was denied access to crucial documents. (Such would not be a failure to consider evidence);

Second: The allegation that the panel failed to consider scaffolding costs provided by Federal's appraiser. There is **no** evidence to support such bald allegation; Federal solely asserts that **"The umpire never explained his reasoning."** (Emphasis in the original); and

Third: The allegation that the panel "disregarded Federal's appraiser" as to factors to be considered in determining ACV. Federal chose not to proffer any evidence even alleging which factors were offered and then "disregarded."

The last alleged failure is similar to the argument that Federal made with regard to the alleged failure of the panel to have included the value of the building. In that the value of the building was never disputed, that no issue was raised in such regard, and in that the policy (total premium listed exceeded $500,000 for all properties insured thereunder) provides coverage for the building (premises #8) limited to the sum of $47,000,000, the failure to have addressed the building's value is inconsequential.

Defendant as well carps that Plaintiff's counsel allegedly directed Defendant not to communicate with its appraiser. In that no one in Plaintiff's counsel's firm had or has authority to direct Defendant as to what to do such is a questionable argument. Perhaps Defendant's counsel was addressing the fact that after over a year of trying to get the appraisal process started, and after Mr. Murray prepared a binder with hundreds of pages supporting Plaintiff's claim, that Defendant's appraiser came with nothing. Murray Decl. ¶8, Wilson Decl. ¶20.

Finally, despite the claims of improper inclusion of Overhead and Profit in the award, the law is well settled that such items are properly included in an award where the services of a general contractor is "reasonably likely." <u>Mazzocki v. State Farm Fire & Cas. Corp.</u>, 1 A.D.3d 9, 12 (3rd Dept. 2003) which has bee cited for authority in <u>SR Intern. Business Ins. Co. Ltd. v. World Trade Center Properties, LLC</u>, 445 F.Supp.2d 320 (S.D.N.Y. 2006).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion in its entirety.

DATED:    New York, New York
                January 30, 2019

                                        Respectfully submitted,

                                        WILKOFSKY, FRIEDMAN,
                                          KAREL & CUMMINS

                            By:    *David Karel*
                                    DAVID B. KAREL (3465)
                                    *Attorney for Plaintiffs*