UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

CORAL REALTY, LLC, and CORAL          Docket No.: 1:17-cv-01007
CRYSTAL, LLC,

     Plaintiffs,

      **DECLARATION OF DAVID PODOLSKY**

 -against-

FEDERAL INSURANCE COMPANY,          Judge Deborah A. Batts

     Defendant.
-----------------------------------------------------------x

David Podolsky, deposes and states the following under penalty of perjury:

1.  I am an employee of Plaintiffs (hereinafter Coral). In the organizations I have the most knowledge of the claims which form the basis of this litigation.

2.  I affirmatively advise the court that I have no knowledge of any fraud, bad faith conduct (on behalf of Plaintiff), nor misconduct (on behalf of Plaintiff) in the appraisal process, and do not believe any exists.

3.  I also state after review of Plaintiff's Memorandum of Law, that it is unnecessary for Plaintiff to respond to the factual issues and alleged errors claimed to exist by Defendant and its counsel.

4.  Although Plaintiff made demand for appraisal in the Spring of 2016, through Defendant's actions in nominating an attorney whose firm worked for and was working for Defendant as its appraiser, the process was delayed through the Spring of 2017.

5.  To help facilitate the then hoped for expeditious actions of the appraisal panel, Charles Murray prepared a binder including all relevant documents concerning the claim, representing the positions of Plaintiff and Defendant.

6. I was advised that Defendant, through its appraiser Wayne Martin, offered plans to the panel with a methodology of performing the repairs from the premises of 133 Third Avenue. In that Coral could not and cannot provide access from such site, such plans were unworkable.

7. Further, as I advised Defendant and its representatives many times, the plans contained numerous inaccurate representations and measurements. I offered to show the entire panel the inaccuracies in the plans offered by Defendant. With Michael Young present, I showed where the plans Defendant offered referenced dimensions were inaccurate. The plans offered by Defendant required widths of three and one-half or four feet. The actual width was solely three feet which rendered Defendant's plans not feasible and not workable for it would not satisfy life/safety exit requirements and could not be approved.

8. As well, the plans offered by Defendant to the panel, alleged that the work performed at the adjoining premises would not disturb Coral's building. I believe such statement was false because I and Coral's attorneys advised Defendant, and the neighboring property owner's representatives of such falsehood on many repeated occasions, in that the plans stated that the work would not be done beyond property line and would not disturb Coral's property. Such plans were rejected by the NYC DOB. As of today there remains a Stop Work Order on the adjacent premises.

9. In that I had the most knowledge of the facts, and in that I could provide access to Coral's building and point out different damages and issues in Coral's building Michael Young requested that I attend at JAMS. While I was there Michael Young conducted "break out" sessions with each side, that is meeting with Plaintiff's "team" and Defendant's "team" both separately and together.

10.     I did advise the panel that the **safety** of the students was a major concern–not their convenience.  To utilize the scaffolding proposed by Defendant would necessitate every student getting OSHA certified, for each student to be compelled to acquire hard hats and harnesses.

11.     Wayne Martin offered plans at the appraisal including what is annexed hereto as Exhibit "5."  Such scaffolding is not an acceptable means for students to use as a means of egress.  One can only imagine the calamity that would occur on a late winter Saturday night if hundreds of college students needed to use such open air possibly icy staircase.  Such could only be used on a construction site by trained workers, wearing appropriate personal protective equipment including boots and hardhats.

12.     I categorically deny that Coral ever refused access to Defendant to inspect the premises.  To the extent any limitation upon access existed or was expressed,  I believe same only related to the fact that Coral could not provide Defendant access from 133 Third Avenue.  Plaintiff is in litigation with 133 Third Avenue's owners and cannot compel that they cooperate with Defendant herein and provide access.

14.     At no time did I ever request that Michael Young pressure Defendant to settle, nor pressure Michael Young.  Of course I did express the desire that the appraisal come to an end at some point in time.  I also state that at no time did I or anyone in my presence present Michael Young with any documents or information that was not as well provided to Wayne Martin.

15.     I was present when surveys were conducted of Coral's North wall/133 Third Avenue's South wall, by both Montrose Surveying and A&B Surveyors.  Such surveys were submitted to the panel.  As well, "sonar" and other probes were performed during the appraisal in an effort to locate where the concrete intrusion occurred and its depth.

16.     Michael Young, James Feuerborn, and Charles Murray all agreed that Plaintiff's proposed "inside-out" method of performing the repairs was the only viable option presented, for Defendant's proposed method was found not to be feasible.

17.     Ken Wilson's estimate provided to the panel and the document which formed the basis of the award, contains a detailed description of the work to be performed on each floor, at each location, the quantities of materials and costs were provide to the appraisal panel. Details provided included plans by C3D Architecture regarding the stairs and the "inside-out" method," the siding system, warranties and lot-line details, as well as the scope of work designed by SR Harwood Consulting Engineering, P.C. Each and every one of these items were presented to the appraisal panel.

18.     After December 2012 Coral's first floor walls became wet and damages occurred caused by the construction activities next door. As well, the construction caused cracks noted in the first floor, that the metal door from the lobby to the stairwells would not close, and other cracks due to the building being pushed in as a result of the December 2012 incident. Plaintiff did not submit a claim for water damage which occurred thereafter. We did advise the panel of such occurrence to evidence that Plaintiff's assertions were valid. Such intrusion evidenced that Plaintiff's building was not watertight. Such information solely evidenced the damages caused by the construction activities which formed the basis for Plaintiff's claim.

19.     In any event, I am advised that Wayne Martin consented to the inclusion of the first floor into the scope of damages! See Exhibit "4" to Defendant's motion. Martin wrote (second paragraph under "1"): " The photos are likely a false impression, but we will move past that and agree to demolish the first floor."

20.     I was present when the Order to Show Cause was argued before the court. I submit that A&B Engineering Land Surveying, P.C.'s fees for attending in court were properly

included in Plaintiff's claims for such expenses were incurred to protect the property from further damage (concededly covered by the policy, see pages 68 and 79 of 201). A&B had appeared in court on an Order to Show Cause brought by Coral to stop the construction from causing further damages Coral's property. See as well Rollins schedule 5 attached to the award evidencing the fees for such appearance in the sum of $1,600.

21.    I note that the appraisal panel found the amounts of Harwood's invoices, and the Extra Expenses incurred, to be properly included in the award, appropriate and incurred as a result of the loss. The panel did not accept the full amount of such invoice; the figure included in the award for Harwood's invoices were reduced by approximately 15%. Michael Young explained his rationale for his thoughts in reducing numerous portions of Plaintiff's claim. (See Exhibit "6" to Defendant's motion). When two of the three panelists agreed upon such figures the amounts were included in the appraisal.

22.    After the repairs Plaintiff's building will not be any improved upon or better off than it had been. The building will have no new features nor any capital improvements. Prior to the December 2012 loss the building was fully code compliant.

23.    Since Defendant made payment in the sum of $832,417.38 in August, 2018, following the issuance of the appraisal award, the plans detailing the proposed scope of repairs proposed by Coral have in fact been filed, filing fees have been paid, and the plans have been submitted for approval.

Dated: New York, New York
January 28, 2019

_____
DAVID PODOLSKY

20151/15J125.76