UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CORAL REALTY, LLC, and CORAL Docket No.: 1:17-cv-01007
CRYSTAL, LLC,

                        Plaintiffs,

                        **DECLARATION OF KEN WILSON**

    -against-

FEDERAL INSURANCE COMPANY,      Judge Deborah A. Batts

                        Defendant.
-------------------------------------------------------x

      Ken Wilson, deposes and states the following under penalty of perjury:

      1.     My prior firm was engaged to provide an estimate of the costs to repair the damages caused by construction activities at 133 Third Avenue, New York. A copy of my resume is annexed hereto as Exhibit "5" evidencing my years of experience, as a builder/estimator.

      2.     I priced the items included in my estimate (included as an attachment with the Appraisal Award to Defendant's motion as Exhibit "3") based upon the scope of damages of Steven Harwood, plans by C3D Architecture regarding the stairs and the "inside-out" method," the siding system, warranties, and lot-line details, and surveys evidencing the intrusion of concrete into Plaintiff's premises.

      3.     Included in my estimate are figures which include costs for daily broom cleaning which are typically included in the estimates and costs of construction projects. As well my estimate includes figures which include the added cleaning expenses that are necessary as the result of dust penetrating the building, as well as content manipulation (moving belongings and personal property) that are typically included in the estimates and costs of construction projects

1

to be done at the end of a project. Such costs are necessarily include as necessary, as well as off-site storage.

4. General Conditions' cleaning is **different** from the cleaning to be performed to address the infiltration of dust, and other cleaning post-construction. General Conditions are found in virtually all construction contracts and estimates. Such represent expenses which are separate from the expenses of performing the actual construction work. Such expenses may be viewed as site management, material handling and project management.

5. General Conditions and Overhead and Profit are detailed in my estimate at pages 39-41. Such are set forth as including: "Commercial Supervision/Project Management; Safety Monitor, General Laborer, Taxes, insurance, permits & fees. These items are properly included and are in hundreds of estimates I have prepared over the years.

6. My estimate included dollar figures for taxes. Taxes were included as being imposed on the costs of repair. Where there is no capital improvement to the premises, it has been my experience and understanding in the construction industry that such taxes be included.

7. Overhead and Profit are figures included in every estimate as an item distinct from General Conditions. Each of these figures is virtually always calculated as a percentage of the total cost of a job. They cover the General Contractor's time and expenses. Overhead costs are operating expenses for necessary equipment and facilities. Profit is what allows the General Contractor to earn his/her living.

8. I inspected and visited the subject premises approximately thirty times. As well I met with the appraisal panel approximately five times. To the panel's members I presented my estimate (initially prepared when I worked for Atlantic), and responded to questions and

2

comments by Michael Young, Wayne Martin, James Feuerborn and other representatives of Federal Insurance Company. I am presently employed at Belfor Restoration, Inc.

9. The "inside-out" method upon which parts of my estimate is the type of method of building utilized for new lot-line building construction where the adjoining property has an existing building and the new building being built must be built from the inside.

10. As part of my efforts to move Coral's repairs forward, and to ensure that the work would be performed properly I successfully assisted Coral in obtaining sub-contractors willing to perform the work set forth in my estimate, and to provide warranties for their work. I also successfully assisted Coral in locating a fabricator to make the wall system to be built.

11. I have been advised that Defendant has claimed that my estimate did not show details of the work, including the scaffolding, to be provided. Such is inaccurate. My estimate on its face provides details of the work to be performed on a floor by floor basis, as well as recaps by trade. In fact, defendant's presentation to the appraisal panel analyzed and commented upon the details of my plan.

12. As well, with regard to scaffolding, the figures presented were explained. My estimate, attached to the appraisal award, shows the scaffolding included at page 37. While the claim was presented at $512,500 for scaffolding, the award of the panel was solely for $300,000 to be included.

13. Defendant has apparently claimed that the demolition and debris figure is unsupported and unreasonable. The 960 yards included was for all debris, including EFIS, Styrofoam, partition walls, insulation, sheetrock, old brick, windows and scaffolding.

14. I, and most others who have been visiting the site for years, have noticed that there were cracks noted in the first floor, that the metal door in the lobby to the lobby would not close due to cracks due to the building being pushed in due to the construction next door. These conditions resulted in water entering into Plaintiff's building prior to the appraisal beginning. The water intrusion which occurred and of which the panel was apprised further evidenced that Plaintiff's building was not watertight.

15. To be totally clear, my estimate does not include values or scope concerning any losses or incidents after December 2012. Specifically it does not include the water intrusion which occurred while the appraisal process was ongoing.

16. Contrary to Defendant's suggestion, the costs for the temporary "tower" did not include purchasing an entirely new air conditioning for the tower. What is included in the line items of my estimate (Exhibit "3" of Defendant's motion, estimate page 36) is HVAC, as per the bid from Nelson Air Device - Maspeth, New York, to 1) remove, relocate and re-install 6 wall mounted convector units presently in front windows of floors 2 thru 6, 2) remove A/C unit from the entry foyer roof and relocate on the roof temporarily and then re-install all units back to their original location, 3) supply and install all necessary ductwork for positive pressure and heat inside new temporary staircase, and 4) large crane for roof top units manipulation. Fire sprinklers areas need to be protected by maintaining heat.

17. The temporary "tower" is designed to be built above the existing lobby which has air conditioners sitting on its roof. Unlike the rest of the building whose roof is above the building's seventeen floors, the lobby's roof is just that, solely above the lobby. To build the tower above requires what is above to be removed.

18. In that the temporary tower is just that, temporary, the tower is not an improvement. As well, neither it nor any other parts of the estimate include values or scope

4

occasioned by ordinance or law. There are no dollar figures in my estimate for code upgrades. The building was code compliant before the loss to my belief and understanding.

19. The portion of the estimate which includes dollar figures regarding the Duane Reade sign are solely to remove and reset the sign (and storage of it). The cost to actually replace the sign would be many multiples of the costs to remove and reset. See my estimate at page 32.

20. I first appeared at the appraisal panel with Charles Murray and Steven Harwood, having set aside five hours to attend. Wayne Martin stated he was only available for one hour with nothing but an umbrella in his hands. He wrote on a sticky note that he thought the claim was worth "$0."

21. I know that the plans and estimates presented on behalf of Federal Insurance Company contained inaccurate information and dimensions. Such plans, and Defendant's proposed method of performing the work was unrealistic and not feasible.

22. I was present at meeting when Defendant was afforded the opportunity to explain its exterior method.

23. I as well wish to note that at pages 37-38 of my estimate, part of Exhibit "3" of Defendant's motion, attached to the appraisal award details are provided concerning the amounts included in my estimate for off-site storage. At the referenced pages my estimate provides:

> Off Site Storage to include:
> 1) off site storage for the following items to be re-installed after necessary structure repairs have been completed (affected windows, doors, heating units, garbage chute doors and A/C unit on lower roof above entry way) for 1 year. The terms of the storage will be adjusted as per the length of the project. Includes packing out and protection of said items prior to being moved off site
>
> 2) 4 large units x 12 months (actual storage duration to be determined).

Dated: New York, New York
January 28, 2019

_____
Ken Wilson

20151/15J125.L74

5