EXHIBIT "3"



# Claim Management Review

| | | | |
|---|---|---|---|
| Insured: | Coral Realty Llc Etal | Client: | Chubb Metro |
| Claimant: | Coral Realty Llc Et Al, 321 Bowery Llc | Review Date: | 9/12/2016 |
| Adjuster: | Gary Pettit | Date of Loss: | 12/5/2012 |
| Claim No: | CHME-0707A9 | | |
| Loss State: | NY | | |
| Defense Counsel: | | | |
| Policy/Limit: | 99836120/$0.00 | Policy dates: | 8/15/2012 - 8/15/2013 |

| Financials | Reserves | Payments | Incurred |
|---|---|---|---|
| Indemnity | $4,128.38 | $105,871.62 | $110,000.00 |
| Medical | $0.00 | $0.00 | $0.00 |
| Expense | $198,316.39 | $451,683.61 | $650,000.00 |
| Recoveries | | $0.00 | $0.00 |
| Totals | $202,444.77 | $557,555.23 | $760,000.00 |

Number of features in occurrence:       Total incurred for occurrence:   $760,000.00

| | | | |
|---|---|---|---|
| **Reportable:** | Yes | **Reserve Appropriate:** | No |
| **Coverage Issues:** | No | | |
| **Reason Reportable:** | Exposure | **Litigation, Mediation, Arbitration:** | No |

### Coverage

NO CHANGE SINCE LAST REPORT:

Reported damage to the building scheduled at Location #8 caused by the activities related to construction of another building along side the insured risk. Information reviewed thus far suggests that the new construction involved pouring a concrete wall against the risk exterior wall, with the concrete forms consisting of styrofoam. The forms were apparently not sufficient to hold the poured concrete in place, allowing pressure to be exerted on the insured risk and causing direct physical damage. This is a commercial package policy with effective dates of 8/15/12-13. The 12/5/12 date of loss falls within the policy period. The building is listed with a $47,000,000.00 limit of insurance, subject to a $10,000.00 loss deductible and a 100% coinsurance requirement. Time element coverage is shown with a $5,800,000.00 limit of insurance, also subject to a 100% coinsurance requirement. Coverage is written on a replacement cost basis. There is an agreed value notation on the building limit of insurance with an expiration date of 8/15/13, effectively suspending the coinsurance provision for direct damages. Base property forms are the CP0010 0607 and CP1030 0607, the latter being an open peril form. Exclusion 2.d.(4) addresses loss caused by or resulting from settling, cracking, shrinking or expansion, but this does not appear to related to the loss as the damage was initiated by an outside agency (improper construction

technique of the building next door). There are no apparent Limitations that apply to the loss. Collapse is excluded, except as provided by the Additional Coverage-Collapse. This additional coverage is provided on a named peril basis and responds to an abrupt falling down or caving in of a building or any part of the building with the result that the structure can't be occupied for its intended purpose. One of the afforded named perils includes use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of said construction, remodeling or renovation. The policy provision does not stipulate if the construction, remodeling or renovation must be taking place on the insured risk. The additional coverage does not increase the limit of insurance and is provided within said limits. A mortgage is shown in favor of Bank of America, NA.

The policy indicates that the insured has two years in which to bring suit against the carrier and that all policy provisions must be complied with. As reported, the Statute of Limitations was scheduled toll on 12/5/14. By written agreement, the carrier has extended this deadline until 6/5/15.

Per carrier instructions, we are proceeding with the investigation on the basis of a covered loss.

UPDATE: We have learned that the correct mortgagee on the date of loss was Wells Fargo Bank NA As Master Servicer.

### Cause of Loss

NO CHANGE SINCE LAST REPORT:

This loss is directly a result of the construction activities of the adjacent building. The adjacent building being constructed is a poured concrete structure. The contractor doing the work formed the exterior walls and backed it with Styrofoam forms. When the poured concrete exerted pressure on the Styrofoam it caused the exterior walls to move inward damaging the drywall.

### Subrogation

**REDACTED**

### Risk

NO CHANGE SINCE LAST REPORT:

The insured risk is a 16 story fire resistive steel building structure located at 201 east 14th Street, New York, NY. The building was constructed in 2002 and occupies 113,754 square feet. The first floor of this structure is a commercial store front for Duane Reade Drug Store and the upper 15 floors are dormitory rooms for 350 NYU Students.

The interior finishes throughout this structure consist of drywall and plaster walls, hardwood and tiled floors and painted surfaces. The electrical services are basic throughout the structure and heat is provided individually on each floor. The pizzeria is the only floor that is sprinklered. The property is serviced by the NYPD and NYFD.

### Insurable Interest

NO CHANGE SINCE LAST REPORT:

We have recently confirmed that the insured's name for the loss location is Coral Crystal, LLC, and that a mortgage is held in favor of Wells Fargo Bank NA as Master Servicer.

### Reserve Rationale

NO CHANGE SINCE LAST REPORT:

Per carrier authority, the file currently has a $110,000.00 indemnity reserve and a $650,000.00 expense reserve. The

current indemnity reserve does not reflect the exposure. An indemnity case reserve recommendation has been conveyed in earlier reports for the carrier's consideration and is under review.

### Adjustment

NO CHANGE SINCE LAST REPORT:

An advance payment was issued early in the claim process based upon the following:

RCV 17,441.36
DEP -1,569.74
ACV 15,871.62
DED -10,000
NET 5,871.62

Recently we received authority to issue a $100,000.00 partial payment as we continue our measurement of the loss. As such, a total of $105,871.62 has been tendered to date.

As mentioned in previous reports, the field adjuster has isolated costs incurred by the insured in pursuit of their litigation efforts against the responsible party, but has recommended that we consider another advance payment in the amount of $111,468.32. These are described within the field adjuster's 25th report as mitigation, loss assessment and management/adjustment costs. In addition, our consultant has estimated the conventional cost of repairs performed from the building exterior in the amount of $120,128.87. The consultant's scope would be possible via an available access license agreement with the adjacent property owner, which would be paid directly by the carrier to the property owner. Therefore, without inclusion of the cost of the access license agreement, our undisputed loss evaluation currently stands as follows:

$111,468.32 Approved incurred costs
$120,128.87 Undisputed repair costs
-------------
$231,597.19 Subtotal
( 10,000.00) Deductible
( 5,871.62) First advance
(100,000.00) Second advance
-------------
$115,725.57 Undisputed recommended payment

The above undisputed payment authority request has already been submitted for carrier consideration. However, as the claim has entered the Appraisal process, the carrier may choose to defer any further payment pending the outcome of that process. Both Appraisers have been selected, but we have no update regarding the selection of the Umpire.

### Salvage

NO CHANGE SINCE LAST REPORT:

The file does not reflect a salvage recovery potential at this time.

### To Be Done

Two invoices were enclosed with our field adjuster's 28th report, with authority already haven been received from the carrier to process payment for the WJE invoice. However, the DBI invoice in the amount of $2,625.00 is unpaid and we request authority at this time to proceed with payment.

Our action plan includes:

--With your authority, process any additional advance payment. If instructed to proceed with an additional advance payment, please advise if partial proof of loss should be solicited.
--With your authority, establish indemnity reserves at your instructed level.
--Monitor Appraisal process.
--Reach agreement on the period of restoration, secure financials and measure time element loss, if any.
--Monitor accuracy of reserves during the life of the claim.
--Audit expense invoices for accuracy prior to giving payment consideration.

Please advise if expense payment authority is extended.



# Claim Management Review

| | | | |
|---|---|---|---|
| Insured: | Coral Realty Llc Etal | Client: | Chubb Metro |
| Claimant: | Coral Realty Llc Et Al, 321 Bowery Llc | Review Date: | 8/11/2016 |
| Adjuster: | Gary Pettit | Date of Loss: | 12/5/2012 |
| Claim No: | CHME-0707A9 | | |
| Loss State: | NY | | |
| Defense Counsel: | | | |
| Policy/Limit: | 99836120/$0.00 | Policy dates: | 8/15/2012 - 8/15/2013 |

| Financials | Reserves | Payments | Incurred |
|---|---|---|---|
| Indemnity | $4,128.38 | $105,871.62 | $110,000.00 |
| Medical | $0.00 | $0.00 | $0.00 |
| Expense | $211,543.39 | $438,456.61 | $650,000.00 |
| Recoveries | | $0.00 | $0.00 |
| Totals | $215,671.77 | $544,328.23 | $760,000.00 |

Number of features in occurrence: 1    Total incurred for occurrence: $760,000.00

| | | | |
|---|---|---|---|
| **Reportable:** | Yes | **Reserve Appropriate:** | No |
| **Coverage Issues:** | No | | |
| **Reason Reportable:** | Exposure | **Litigation, Mediation, Arbitration:** | No |

### Coverage

Reported damage to the building scheduled at Location #8 caused by the activities related to construction of another building along side the insured risk. Information reviewed thus far suggests that the new construction involved pouring a concrete wall against the risk exterior wall, with the concrete forms consisting of styrofoam. The forms were apparently not sufficient to hold the poured concrete in place, allowing pressure to be exerted on the insured risk and causing direct physical damage. This is a commercial package policy with effective dates of 8/15/12-13. The 12/5/12 date of loss falls within the policy period. The building is listed with a $47,000,000.00 limit of insurance, subject to a $10,000.00 loss deductible and a 100% coinsurance requirement. Time element coverage is shown with a $5,800,000.00 limit of insurance, also subject to a 100% coinsurance requirement. Coverage is written on a replacement cost basis. There is an agreed value notation on the building limit of insurance with an expiration date of 8/15/13, effectively suspending the coinsurance provision for direct damages. Base property forms are the CP0010 0607 and CP1030 0607, the latter being an open peril form. Exclusion 2.d.(4) addresses loss caused by or resulting from settling, cracking, shrinking or expansion, but this does not appear to related to the loss as the damage was initiated by an outside agency (improper construction technique of the building next door). There are no apparent Limitations that apply to the loss. Collapse is excluded, except as provided by the Additional Coverage-Collapse. This additional coverage is provided on a named peril basis and

responds to an abrupt falling down or caving in of a building or any part of the building with the result that the structure can't be occupied for its intended purpose. One of the afforded named perils includes use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of said construction, remodeling or renovation. The policy provision does not stipulate if the construction, remodeling or renovation must be taking place on the insured risk. The additional coverage does not increase the limit of insurance and is provided within said limits. A mortgage is shown in favor of Bank of America, NA.

The policy indicates that the insured has two years in which to bring suit against the carrier and that all policy provisions must be complied with. As reported, the Statute of Limitations was scheduled toll on 12/5/14. By written agreement, the carrier has extended this deadline until 6/5/15.

Per carrier instructions, we are proceeding with the investigation on the basis of a covered loss.

UPDATE: We have learned that the correct mortgagee on the date of loss was Wells Fargo Bank NA As Master Servicer.

### Cause of Loss

NO CHANGE SINCE LAST REPORT:

This loss is directly a result of the construction activities of the adjacent building. The adjacent building being constructed is a poured concrete structure. The contractor doing the work formed the exterior walls and backed it with Styrofoam forms. When the poured concrete exerted pressure on the Styrofoam it caused the exterior walls to move inward damaging the drywall.

### Subrogation



### Risk

NO CHANGE SINCE LAST REPORT:

The insured risk is a 16 story fire resistive steel building structure located at 201 east 14th Street, New York, NY. The building was constructed in 2002 and occupies 113,754 square feet. The first floor of this structure is a commercial store front for Duane Reade Drug Store and the upper 15 floors are dormitory rooms for 350 NYU Students.

The interior finishes throughout this structure consist of drywall and plaster walls, hardwood and tiled floors and painted surfaces. The electrical services are basic throughout the structure and heat is provided individually on each floor. The pizzeria is the only floor that is sprinklered. The property is serviced by the NYPD and NYFD.

### Insurable Interest

We have recently confirmed that the insured's name for the loss location is Coral Crystal, LLC, and that a mortgage is held in favor of Wells Fargo Bank NA as Master Servicer.

### Reserve Rationale

Per carrier authority, the file currently has a $110,000.00 indemnity reserve and a $650,000.00 expense reserve. The current indemnity reserve does not reflect the exposure. An indemnity case reserve recommendation has been conveyed in earlier reports for the carrier's consideration and is under review.

FS001969

## Adjustment

NO CHANGE SINCE LAST REPORT:

An advance payment was issued early in the claim process based upon the following:

RCV 17,441.36
DEP -1,569.74
ACV 15,871.62
DED-10,000
NET 5,871.62

Recently we received authority to issue a $100,000.00 partial payment as we continue our measurement of the loss. As such, a total of $105,871.62 has been tendered to date.

As mentioned in previous reports, the field adjuster has isolated costs incurred by the insured in pursuit of their litigation efforts against the responsible party, but has recommended that we consider another advance payment in the amount of $111,468.32. These are described within the field adjuster's 25th report as mitigation, loss assessment and management/adjustment costs. In addition, our consultant has estimated the conventional cost of repairs performed from the building exterior in the amount of $120,128.87. The consultant's scope would be possible via an available access license agreement with the adjacent property owner, which would be paid directly by the carrier to the property owner. Therefore, without inclusion of the cost of the access license agreement, our undisputed loss evaluation currently stands as follows:

$111,468.32 Approved incurred costs
$120,128.87 Undisputed repair costs
------------
$231,597.19 Subtotal
( 10,000.00) Deductible
( 5,871.62) First advance
(100,000.00) Second advance
------------
$115,725.57 Undisputed recommended payment

The above undisputed payment authority request has already been submitted for carrier consideration. However, as the claim has entered the Appraisal process, the carrier may choose to defer any further payment pending the outcome of that process. Both Appraisers have been selected, but we have no update regarding the selection of the Umpire.

## Salvage

NO CHANGE SINCE LAST REPORT:

The file does not reflect a salvage recovery potential at this time.

## To Be Done

Our action plan includes:

--With your authority, process any additional advance payment. If instructed to proceed with an additional advance payment, please advise if partial proof of loss should be solicited.
--With your authority, establish indemnity reserves at your instructed level.
--Monitor Appraisal process.
--Reach agreement on the period of restoration, secure financials and measure time element loss, if any.
--Monitor accuracy of reserves during the life of the claim.
--Audit expense invoices for accuracy prior to giving payment consideration.

All expense invoices currently in the file are paid.



# Claim Management Review

| | | | |
|---|---|---|---|
| Insured: | Coral Realty Llc Etal | Client: | Chubb Metro |
| Claimant: | Coral Realty Llc Et Al, 321 Bowery Llc | Review Date: | 7/11/2016 |
| Adjuster: | Gary Pettit | Date of Loss: | 12/5/2012 |
| Claim No: | CHME-0707A9 | | |
| Loss State: | NY | | |
| Defense Counsel: | | | |
| Policy/Limit: | 99836120/$0.00 | Policy dates: | 8/15/2012 - 8/15/2013 |

| Financials | Reserves | Payments | Incurred |
|---|---|---|---|
| Indemnity | $4,128.38 | $105,871.62 | $110,000.00 |
| Medical | $0.00 | $0.00 | $0.00 |
| Expense | $254,265.78 | $395,734.22 | $650,000.00 |
| Recoveries | | $0.00 | $0.00 |
| Totals | $258,394.16 | $501,605.84 | $760,000.00 |

Number of features in occurrence: 1   Total incurred for occurrence: $760,000.00

| | | | |
|---|---|---|---|
| **Reportable:** | Yes | **Reserve Appropriate:** | No |
| **Coverage Issues:** | No | | |
| **Reason Reportable:** | Exposure | **Litigation, Mediation, Arbitration:** | No |

## Coverage

NO CHANGE SINCE LAST REPORT:

Reported damage to the building scheduled at Location #8 caused by the activities related to construction of another building along side the insured risk. Information reviewed thus far suggests that the new construction involved pouring a concrete wall against the risk exterior wall, with the concrete forms consisting of styrofoam. The forms were apparently not sufficient to hold the poured concrete in place, allowing pressure to be exerted on the insured risk and causing direct physical damage. This is a commercial package policy with effective dates of 8/15/12-13. The 12/5/12 date of loss falls within the policy period. The building is listed with a $47,000,000.00 limit of insurance, subject to a $10,000.00 loss deductible and a 100% coinsurance requirement. Time element coverage is shown with a $5,800,000.00 limit of insurance, also subject to a 100% coinsurance requirement. Coverage is written on a replacement cost basis. There is an agreed value notation on the building limit of insurance with an expiration date of 8/15/13, effectively suspending the coinsurance provision for direct damages. Base property forms are the CP0010 0607 and CP1030 0607, the latter being an open peril form. Exclusion 2.d.(4) addresses loss caused by or resulting from settling, cracking, shrinking or expansion, but this does not appear to related to the loss as the damage was initiated by an outside agency (improper construction

technique of the building next door). There are no apparent Limitations that apply to the loss. Collapse is excluded, except as provided by the Additional Coverage-Collapse. This additional coverage is provided on a named peril basis and responds to an abrupt falling down or caving in of a building or any part of the building with the result that the structure can't be occupied for its intended purpose. One of the afforded named perils includes use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of said construction, remodeling or renovation. The policy provision does not stipulate if the construction, remodeling or renovation must be taking place on the insured risk. The additional coverage does not increase the limit of insurance and is provided within said limits. A mortgage is shown in favor of Bank of America, NA.

The policy indicates that the insured has two years in which to bring suit against the carrier and that all policy provisions must be complied with. As reported, the Statute of Limitations was scheduled toll on 12/5/14. By written agreement, the carrier has extended this deadline until 6/5/15.

Per carrier instructions, we are proceeding with the investigation on the basis of a covered loss.

### Cause of Loss

NO CHANGE SINCE LAST REPORT:

This loss is directly a result of the construction activities of the adjacent building. The adjacent building being constructed is a poured concrete structure. The contractor doing the work formed the exterior walls and backed it with Styrofoam forms. When the poured concrete exerted pressure on the Styrofoam it caused the exterior walls to move inward damaging the drywall.

### Subrogation


REDACTED

### Risk

NO CHANGE SINCE LAST REPORT:

The insured risk is a 16 story fire resistive steel building structure located at 201 east 14th Street, New York, NY. The building was constructed in 2002 and occupies 113,754 square feet. The first floor of this structure is a commercial store front for Duane Reade Drug Store and the upper 15 floors are dormitory rooms for 350 NYU Students.

The interior finishes throughout this structure consist of drywall and plaster walls, hardwood and tiled floors and painted surfaces. The electrical services are basic throughout the structure and heat is provided individually on each floor. The pizzeria is the only floor that is sprinklered. The property is serviced by the NYPD and NYFD.

### Insurable Interest

NO CHANGE SINCE LAST REPORT:

Our initial title search was several years old and no longer accurate. An updated search was recently performed, indicating a mortgage now held in favor of U. S. Bank, NA, as trustee on behalf of Citigroup Commercial Mortgage Securities, Inc.

### Reserve Rationale

Per carrier authority, the file currently has a $110,000.00 indemnity reserve and a $400,000.00 expense reserve. The current indemnity reserve does not reflect the exposure. An indemnity case reserve recommendation has been conveyed in earlier reports for the carrier's consideration and is under review.

Per your authority, we have increased the expense reserve to $650,000.00.

## Adjustment

NO CHANGE SINCE LAST REPORT:

An advance payment was issued early in the claim process based upon the following:

RCV 17,441.36
DEP -1,569.74
ACV 15,871.62
DED -10,000
NET 5,871.62

Recently we received authority to issue a $100,000.00 partial payment as we continue our measurement of the loss. As such, a total of $105,871.62 has been tendered to date.

As mentioned in previous reports, the field adjuster has isolated costs incurred by the insured in pursuit of their litigation efforts against the responsible party, but has recommended that we consider another advance payment in the amount of $111,468.32. These are described within the field adjuster's 25th report as mitigation, loss assessment and management/adjustment costs. In addition, our consultant has estimated the conventional cost of repairs performed from the building exterior in the amount of $120,128.87. The consultant's scope would be possible via an available access license agreement with the adjacent property owner, which would be paid directly by the carrier to the property owner. Therefore, without inclusion of the cost of the access license agreement, our undisputed loss evaluation currently stands as follows:

$111,468.32 Approved incurred costs
$120,128.87 Undisputed repair costs
-------------
$231,597.19 Subtotal
( 10,000.00) Deductible
( 5,871.62) First advance
(100,000.00) Second advance
-------------
$115,725.57 Undisputed recommended payment

The above undisputed payment authority request has already been submitted for carrier consideration. However, as the claim has entered the Appraisal process, the carrier may choose to defer any further payment pending the outcome of that process. Both Appraisers have been selected, but we have no update regarding the selection of the Umpire.

## Salvage

NO CHANGE SINCE LAST REPORT:

The file does not reflect a salvage recovery potential at this time.

## To Be Done

Our action plan includes:

--With your authority, process payment for the outstanding expense invoices in the total amount of $25,918.87.
--With your authority, process any additional advance payment. If instructed to proceed with an additional advance payment, please advise if partial proof of loss should be solicited.
--With your authority, establish indemnity reserves at your instructed level.
--Monitor Appraisal process.
--Reach agreement on the period of restoration, secure financials and measure time element loss, if any.
--Monitor accuracy of reserves during the life of the claim.
--Audit expense invoices for accuracy prior to giving payment consideration.



# Claim Management Review

| | | | |
|---|---|---|---|
| Insured: | Coral Realty Llc Etal | Client: | Chubb Metro |
| Claimant: | Coral Realty Llc Et Al, 321 Bowery Llc | Review Date: | 6/7/2016 |
| Adjuster: | Gary Pettit | Date of Loss: | 12/5/2012 |
| Claim No: | CHME-0707A9 | | |
| Loss State: | NY | | |
| Defense Counsel: | | | |
| Policy/Limit: | 99836120/$0.00 | Policy dates: | 8/15/2012 - 8/15/2013 |

| Financials | Reserves | Payments | Incurred |
|---|---|---|---|
| Indemnity | $4,128.38 | $105,871.62 | $110,000.00 |
| Medical | $0.00 | $0.00 | $0.00 |
| Expense | $11,483.28 | $388,516.72 | $400,000.00 |
| Recoveries | | $0.00 | $0.00 |
| Totals | $15,611.66 | $494,388.34 | $510,000.00 |

Number of features in occurrence: 1    Total incurred for occurrence: $510,000.00

| | | | |
|---|---|---|---|
| **Reportable:** | Yes | **Reserve Appropriate:** No | **Coverage Issues:** No |
| **Reason Reportable:** | Exposure | **Litigation, Mediation, Arbitration:** | No |

## Coverage

NO CHANGE SINCE LAST REPORT:

Reported damage to the building scheduled at Location #8 caused by the activities related to construction of another building along side the insured risk. Information reviewed thus far suggests that the new construction involved pouring a concrete wall against the risk exterior wall, with the concrete forms consisting of styrofoam. The forms were apparently not sufficient to hold the poured concrete in place, allowing pressure to be exerted on the insured risk and causing direct physical damage. This is a commercial package policy with effective dates of 8/15/12-13. The 12/5/12 date of loss falls within the policy period. The building is listed with a $47,000,000.00 limit of insurance, subject to a $10,000.00 loss deductible and a 100% coinsurance requirement. Time element coverage is shown with a $5,800,000.00 limit of insurance, also subject to a 100% coinsurance requirement. Coverage is written on a replacement cost basis. There is an agreed value notation on the building limit of insurance with an expiration date of 8/15/13, effectively suspending the coinsurance provision for direct damages. Base property forms are the CP0010 0607 and CP1030 0607, the latter being an open peril form. Exclusion 2.d.(4) addresses loss caused by or resulting from settling, cracking, shrinking or expansion, but this does not appear to related to the loss as the damage was initiated by an outside agency (improper construction

technique of the building next door). There are no apparent Limitations that apply to the loss. Collapse is excluded, except as provided by the Additional Coverage-Collapse. This additional coverage is provided on a named peril basis and responds to an abrupt falling down or caving in of a building or any part of the building with the result that the structure can't be occupied for its intended purpose. One of the afforded named perils includes use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of said construction, remodeling or renovation. The policy provision does not stipulate if the construction, remodeling or renovation must be taking place on the insured risk. The additional coverage does not increase the limit of insurance and is provided within said limits. A mortgage is shown in favor of Bank of America, NA.

The policy indicates that the insured has two years in which to bring suit against the carrier and that all policy provisions must be complied with. As reported, the Statute of Limitations was scheduled toll on 12/5/14. By written agreement, the carrier has extended this deadline until 6/5/15.

Per carrier instructions, we are proceeding with the investigation on the basis of a covered loss.

### Cause of Loss

NO CHANGE SINCE LAST REPORT:

This loss is directly a result of the construction activities of the adjacent building. The adjacent building being constructed is a poured concrete structure. The contractor doing the work formed the exterior walls and backed it with Styrofoam forms. When the poured concrete exerted pressure on the Styrofoam it caused the exterior walls to move inward damaging the drywall.

### Subrogation



REDACTED

### Risk

NO CHANGE SINCE LAST REPORT:

The insured risk is a 16 story fire resistive steel building structure located at 201 east 14th Street, New York, NY. The building was constructed in 2002 and occupies 113,754 square feet. The first floor of this structure is a commercial store front for Duane Reade Drug Store and the upper 15 floors are dormitory rooms for 350 NYU Students.

The interior finishes throughout this structure consist of drywall and plaster walls, hardwood and tiled floors and painted surfaces. The electrical services are basic throughout the structure and heat is provided individually on each floor. The pizzeria is the only floor that is sprinklered. The property is serviced by the NYPD and NYFD.

### Insurable Interest

NO CHANGE SINCE LAST REPORT:

Our initial title search was several years old and no longer accurate. An updated search was recently performed, indicating a mortgage now held in favor of U. S. Bank, NA, as trustee on behalf of Citigroup Commercial Mortgage Securities, Inc.

### Reserve Rationale

Per carrier authority, the file currently has a $110,000.00 indemnity reserve and a $400,000.00 expense reserve. The current indemnity reserve does not reflect the exposure. An indemnity case reserve recommendation has been conveyed in earlier reports for the carrier's consideration and is under review.

The expense reserve is not sufficient to address all incurred invoices. Our enclosed worksheet demonstrates the

expenses incurred to date and offers our projection of the likely remaining expenses during the life of the claim. We recommend an increase of the expense reserve to $650,000.00.

### Adjustment

NO CHANGE SINCE LAST REPORT:

An advance payment was issued early in the claim process based upon the following:

RCV 17,441.36
DEP -1,569.74
ACV 15,871.62
DED -10,000
NET 5,871.62

Recently we received authority to issue a $100,000.00 partial payment as we continue our measurement of the loss. As such, a total of $105,871.62 has been tendered to date.

As mentioned in previous reports, the field adjuster has isolated costs incurred by the insured in pursuit of their litigation efforts against the responsible party, but has recommended that we consider another advance payment in the amount of $111,468.32. These are described within the field adjuster's 25th report as mitigation, loss assessment and management/adjustment costs. In addition, our consultant has estimated the conventional cost of repairs performed from the building exterior in the amount of $120,128.87. The consultant's scope would be possible via an available access license agreement with the adjacent property owner, which would be paid directly by the carrier to the property owner. Therefore, without inclusion of the cost of the access license agreement, our undisputed loss evaluation currently stands as follows:

$111,468.32 Approved incurred costs
$120,128.87 Undisputed repair costs
-------------
$231,597.19 Subtotal
( 10,000.00) Deductible
( 5,871.62) First advance
(100,000.00) Second advance
-------------
$115,725.57 Undisputed recommended payment

The above undisputed payment authority request has already been submitted for carrier consideration. However, as the claim has entered the Appraisal process, the carrier may choose to defer any further payment pending the outcome of that process. Both Appraisers have been selected, but we have nothing to report regarding the selection of the Umpire.

In spite of the Appraisal demand, the PA requested an onsite meeting to consider areas of damage not previously inspected or discussed. This meeting was scheduled for 5/26/16.

### Salvage

NO CHANGE SINCE LAST REPORT:

The file does not reflect a salvage recovery potential at this time.

### To Be Done

We acknowledge the carrier's expense payment authority for the Halliwell Engineering Associates invoice #13-0460-11, in the amount of $16,433.28, as well as payment authority for the DBI Consultant invoice #18059, in the amount of $2,560.00. We have processed payment for the latter, but the Halliwell invoice will require an expense reserve increase prior to processing.

We continue to await presentation of the DBI Consulting invoice #17874, in the amount of $3,102.50, and will audit for accuracy when received prior to requesting payment authority.

We await notice of selection of the Umpire for the Appraisal process.

Our action plan includes:

--With your authority, increase the expense reserve.
--Process payment for the outstanding Halliwell invoice.
--With your authority, process any additional advance payment. If instructed to proceed with an additional advance payment, please advise if partial proof of loss should be solicited.
--With your authority, establish indemnity reserves at your instructed level.
--Monitor Appraisal process.

FS002407