UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
CORAL REALTY, LLC, and CORAL CRYSTAL LLC,

                                                 Plaintiffs,

                          v.

FEDERAL INSURANCE COMPANY,

                                                 Defendant.
-----------------------------------------------------------------------X

Civil Action No.
1:17-cv-01007

### SUPPLEMENTAL DECLARATION OF DANIEL JOSEPH HOGAN, RA, AIA

Daniel Joseph Hogan, deposes and states the following under the penalty of perjury:

1.     I submit this Supplemental Declaration in further support of Federal's Motion.[1]

2.     I incorporate by reference the statements contained in my December 21, 2018 Declaration (ECF No. 37) annexed to Federal's Motion.

3.     This Declaration will make the following rebuttals to statements made in Coral's Opposition to Federal's Motion and supporting documentation: (1) the Steel Staircase proposed by Federal would be perfectly safe and would not require any students to become OSHA certified; (2) Coral's pre-filing of its proposed repairs with the NYC Department of Buildings ("DOB") is entirely inconsistent with the Appraisal Award and Coral's Inside-Out Method; and (3) during the appraisal, I was never presented with the C3D drawings annexed to Coral's Opposition as Exhibit 4 (ECF No. 41-9).

---

[1] Unless otherwise defined, capitalized terms shall have the same meaning as provided in Federal's Motion (ECF No. 34), Federal's Opposition (ECF No. 42), and the Declaration of Daniel Joseph Hogan, RA, AIA (ECF No. 37).

1

**Steel Staircase Would Not Require OSHA Certification**

4. Contrary to Coral's assertions, use of the Steel Staircase proposed by Federal would not require any tenant—student or otherwise—to become OSHA certified.

5. There is a significant difference between what the construction industry commonly refers to as "OSHA stairs," and the Steel Staircase, which the construction industry commonly refers to as "IBC stairs" as pointed out in a helpful article entitled "Safety Codes: What's the Difference Between IBC and OSHA Stairs?" and found at https://www.erectastep.com/safety-codes-whats-the-difference-between-ibc-and-osha-stairs.

6. As pointed out in the article and as construction professionals well understand, OSHA stairs are intended to be safely used by trained construction workers, require less space, are more efficient and economical for construction activity and have less stringent requirements than IBC stairs based on Federal OSHA (Occupational Safety and Health Administration) standards. For example, an OSHA stair can handle a 12-foot vertical rise in only 26 square feet with 22-inch-wide stairs at a steep 45-degree stair angle with guard rail openings as wide as 19 inches.

7. On the other hand, IBC stairs (like the Steel Staircase) are designed to be safely used without any special training by the general public who are not OSHA certified (like the student tenants of the Building). IBC stairs require more space and have greater safety features based on requirements outlined by the International Code Council in chapter 10 of the IBC (International Building Code) model code which are the same as requirements outlined by the New York City Department of Buildings in chapter 10 of the New York City Building Code. For example, an IBC stair requires 57 square feet to handle a 12-foot vertical rise with 36-inch wide stairs at a gentle 32-degree angle with guard rail openings limited to 4 inches.

8. Thus, the Steel Staircase would be perfectly safe for the students. No one would be required to become OSHA certified in order to use the Steel Staircase.

9. The images annexed to Coral's Opposition as Exhibit 5 (ECF No. 41-10) were part of a larger presentation including numerous other images for discussion of options alternative to the Tower. The images in Exhibit 5 (ECF No. 41-10) do not accurately represent the Steel Staircase described in my previous Declaration (ECF No. 37). Rather, the Steel Staircase is more accurately portrayed in the photographs annexed hereto as **Exhibit "15."**

10. In the declaration of Steven Harwood, Coral's engineer, he provided a "protocol" for repairs using the Inside-Out Method. *See* Harwood Dec. (ECF No. 41-5) ¶ 8.

11. Item number 3 within Harwood's protocol is an accurate description of the Steel Staircase.

12. The actual stair configuration of Coral's Tower and Federal's Steel Staircase is exactly the same.

13. Federal's Steel Staircase would have the exact same number of risers and treads as Coral's Tower.

14. Federal's Steel Staircase would have the exact same hand rails and guard rails as Coral's Tower.

15. Federal's Steel Staircase would maintain full compliance with the exact same building code requirements as Coral's Tower.

**Coral's Pre-Filing with the DOB is Entirely Inconsistent with the Inside-Out Method**

16. As of February 20, 2019, Coral has not filed a single plan, requested any permit, or in any way commenced repairs.

17.     On December 27, 2018, Coral made a spurious pre-filing with the NYC Department of Buildings (the "DOB"). A true and correct copy of the pre-filing—certified by the DOB—is annexed hereto as **Exhibit "16"** (the "Pre-Filing").

18.     One purpose of a pre-filing is to obtain a Job Number in the NYC DOB system. The subject Pre-Filing was given the Job Number 123210961. A Pre-Filing is normally followed by an actual filing within days. It is highly unusual that there is a Pre-Filing on December 27, 2018 which, after 54 days, has not been followed by any actual filing or submission of forms or documents or drawings or payments of the minimum fees (half of the total fees) to begin review of submitted items.

19.     Contrary to the Declaration of David Podolsky (ECF No. 41-3), "the plans detailing the proposed scope of repairs proposed by Coral" have not been filed, no fees have been paid and no plans have been submitted for approval.

20.     The Pre-Filing was accompanied by no plans. Specifically, the DOB's database states: "No Scanned Documents Found For This Job," "NO REQUIRED ITEMS WERE ENTERED," and "NO FORMS RECORDS FOUND FOR 123210961 [the Pre-Filing's DOB Job Number]." A true and correct copy of the documents stating the foregoing—obtained from and certified by the DOB—is annexed hereto as **Exhibit "17."**

21.     Contrary to the Declaration of David Podolsky (ECF No. 41-3), the DOB database indicates that no filing fees have been paid in connection with the Pre-Filing. A true and correct copy of the document stating the foregoing—obtained from and certified by the DOB—is annexed hereto as **Exhibit "18."**

22.     Further, Coral's Pre-Filing is inconsistent with the Appraisal Award and Coral's Inside-Out Method in many aspects, including the six inconsistencies discussed below.

23. First, Coral's Pre-Filing indicates that the estimated total cost of repairs is $1,385,000. Exhibit 16 at p. 1.

24. Second, Coral's Pre-Filing indicates that work will be performed only to floors two through four. *Id.* at p. 1 § 1.

25. Third, Coral's Pre-Filing indicates that the work will not include demolition. *Id.* at p. 2 § 5; p. 3 § 9; p. 4 § 21.

26. The Pre-Filing also explicitly indicates that the work does not involve "partial demolition as defined in AC §28-101.5." *Id.* p. 3 § 9.

27. AC § 28-101.5 states: "DEMOLITION, PARTIAL: The dismantling, razing, or removal of structural members, floors, interior bearing walls, and/or exterior walls or portions thereof, including all operations incidental thereto." (https://www1.nyc.gov/assets/buildings/building_code/2014_CC_AC_Total.pdf).

28. Coral's Inside-Out Method, upon which the Appraisal Award is based, includes demolition of the Wall.

29. In order to perform the Inside-Out Method, Coral's Pre-Filing would need to indicate that the work includes demolition.

30. However, under Federal's Exterior Method, it would be accurate for Coral to indicate in its Pre-Filing that the work does *not* include demolition.

31. The fourth inconsistency between Coral's Pre-Filing and the Appraisal Award is that Coral's Pre-Filing indicates that the Building will not remain occupied during repairs. Exhibit 16 at p. 4 § 26. Specifically, Coral marked "No" under "Owner's Certification Regarding Occupied Housing." *Id.* The user guide clarifies that in such section, "[t]he Owner **must** indicate the dwellings that will be occupied during construction." N.Y.C. DEP'T OF BLDGS., PW1 USER

GUIDE p. 20 § 26, https://www1.nyc.gov/assets/buildings/pdf/pw1_userguide.pdf (emphasis in original).

32. Fifth, Coral's Pre-Filing indicates that the work will not involve the alteration, repair, or removal of any system including all equipment and materials having the purpose of controlling, containing, suppressing, or extinguishing fire. *See* Coral's Pre-Filing, Section 6.

33. The A.C.N.Y. Estimate (ECF No. 35-3), p. 36, line 320, includes costs for "Fire Sprinklers - extend 2" sprinklers pipes w/ new heads per floor and return to existing locations after repairs have been completed. Includes purging and testing of existing system from the basement to the 6th floor. There will be a total 3 sprinklers per floor that will require rerouting to properly protect existing ares [sic] and the new stairwell being installed."

34. In order to perform the work indicated in Line 320 of the A.C.N.Y. Estimate, the Pre-Filing would need to indicate that Fire Suppression work would be performed.

35. Sixth, Coral's Pre-Filing indicates that construction equipment is not applicable to Coral's proposed scope of work.

36. However, under the Inside-Out Method, Coral would need to use construction equipment.

37. To be absolutely certain that no actual filings or other pre-filings had been made with the DOB, I asked the DOB for certified records of all four of the Building's building identification numbers (BINs). For all four BINs, the only thing resembling a filing subsequent to the date of loss (December 5, 2012), is the one spurious Pre-Filing made on December 27, 2018, referenced *supra* ¶ 17, and annexed hereto as Exhibit 16. A true and correct copy of documents obtained from and certified by the DOB for all four of the Building's BINs is annexed hereto as **Exhibit "19."**

**The C3D Drawing Is Insufficient to Depict the Inside-Out Method**

38. During the appraisal, I was never presented with the drawing annexed to Coral's Opposition as Exhibit 4 (ECF No. 41-9) (the "C3D Schematic").

39. Nonetheless, the C3D Schematic is grossly insufficient to depict the Inside-Out Method. Rather, it is a rudimentary schematic depicting a vague, general idea.

40. The C3D Schematic fails to provide sufficient detail to show how Coral alleges that the Inside-Out Method could be performed.

41. The C3D Schematic fails to depict a fully-developed system that could actually be built.

42. First, the C3D Schematic has not been signed or sealed. This indicates that it is preliminary.

43. Second, while the C3D Schematic is on the block of an architect, nothing else in the title block is filled out. C3D failed to include the date, project number, person it was drawn by, person it was checked by, and the scale. This further indicates that the C3D Schematic is preliminary.

44. Third, the C3D Schematic states, "ISSUE FOR REVIEW," which indicates that it is a rough draft of the thought process. Such comment means that the C3D Schematic was issued for someone to take a look and see what they think before getting any deeper into it.

45. Fourth, the C3D Schematic states: "COPPER METAL CLADDING ATTACHMENTS AS PER MANUFACTURER'S RECOMMENDATIONS." This is insufficient to explain how the copper metal cladding will be attached through the exterior gypsum board to the metal stud framing.

46. Had I been presented with the C3D Schematic during the appraisal, I would have had many follow-up questions about it. For example:

   a. Has this concept ever been built before?

   b. Has anyone ever built a mock-up of this concept?

   c. Who (even potentially) is the manufacturer referred to in the note about manufacturer's recommendations?

   d. How will this wall be maintained over the years to come?

   e. How is the subject wall attached to the existing subject building?

   f. Where are the structural plans referred to in the note "attachment to the slab per structural plans"?

47. The A.C.N.Y. Estimate (ECF No. 35-3) provides no construction detail explaining how the Inside-Out Method would be performed.

48. The Declaration of Steven Harwood (ECF No. 41-5) fails to address or rebut the statements I made in my previous Declaration (ECF No. 37) proving that the Inside-Out Method is impossible to perform.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 21, 2019




Daniel J. Hogan, RA, AIA

New York State Registered Architect, License #034083

New York City Department of Buildings Architect